**FAIRWAY FOODS, Inc.**
v.
**FAIRWAY MARKETS, Inc. et al.**
No. 13654.

United States District Court,
S. D. California, Central Division.
June 4, 1953.

Hill, Farrar & Burrill, George T. Callanan, Los Angeles, Cal., Mellin, Hanscom & Hursh, Oscar A. Mellin, LeRoy Hanscom, Jack E. Hursh, San Francisco, Cal., L. Glenn Fassett, Minneapolis, Minn., for plaintiff.

Leonard Horwin and Wolfson & Essey, Beverly Hills, Cal., for defendants.

WESTOVER, District Judge.

Plaintiff herein is a cooperative, owned wholly by retail grocers located and doing business in the States of Minnesota, North Dakota, South Dakota, Wisconsin and Iowa. Plaintiff's sole business is the procurement and sale of food products to its member grocers, all of whom are located in and doing business exclusively in the five states mentioned. Plaintiff has established in these five states a secondary meaning for the term "Fairway" or "Fairway Foods", and plaintiff registered the name with the United States Patent Office.

Plaintiff purchases its foodstuffs (which are then sold in its member stores) in various communities of the United States. Many of its purchases are in California where the foodstuff purchased is processed, canned and packed. Plaintiff places contracts for processing of fruits and vegetables with California packers and processors, send-

ing to them its own labels to be affixed to the finished canned or packaged item. Subsequently, the cans and packages so labeled are shipped to warehouses belonging to plaintiff, situated somewhere within the territorial limits of the five states in which it operates, and from such warehouses the goods are distributed to the individual members of plaintiff's cooperative.

Plaintiff's practice, outlined above, has been conducted for more than thirty years, and there can be no doubt that the name "Fairway" is established in the minds of California processors and packers with whom plaintiff has been doing business. However, none of the merchandise processed and packaged in California has ever been sold within the State of California on the retail market.

Defendants erected a large "supermarket" near the intersection of Atlantic and Garvey Boulevards in Monterey Park, Los Angeles County, California, under the name "Fairway Markets, Inc." This action was filed by plaintiff against defendants to restrain infringement of its trade-mark and for unfair competition.

Although plaintiff is known to certain canners and processors of food located in California, who have been selling canned or processed food-stuffs to plaintiff for many years, nevertheless, plaintiff is unknown to the buying public in California (including the County of Los Angeles). Plaintiff has never qualified to do business in the State of California and has never transacted business in this state except to purchase canned or processed foods for distribution in the five states above mentioned.

■ There is no evidence in this case to justify a finding that the use of the term "Fairway" by defendants is based upon fraud or was for the purpose of taking advantage of the good will or prestige which plaintiff has established for its products within the five states in which it operates. Defendants have suggested that they used the word "Fairway" for one or two reasons—the first

being that the store in Monterey Park is located on the fairway of an abandoned golf course, and inasmuch as the golf course had been long established in that locality and those who played golf understood the term "Fairway", this fact influenced them in the choice of that name; and the second suggested reason for use of the term is that it is symbolic, indicating a "fair way" of doing business. There is no evidence to show, and defendants deny, they ever heard of Fairway Foods or of plaintiff's prior use of the name, or of plaintiff, until notice from plaintiff that defendants were infringing upon plaintiff's rights. Consequently, it is the opinion of this court that the use of the name "Fairway" by defendants was innocent and there is nothing to indicate any design or intention on defendants' part to "cash in" on the prestige of the name or the brand in the State of California.

Plaintiff used the name "Fairway" many years before it was adopted by defendants, and there is no doubt in the mind of the court that defendants would be precluded from use of the name in the territory now occupied by plaintiff in the five states mentioned to establish "Fairway Markets" there. Plaintiff, however, now wishes to extend its priority to California, some fifteen hundred miles away from the nearest store operated or controlled by it. Plaintiff states there is a possibility that within the near future it may wish to enter into the retail food market business in California; that because of the purchase of food products as herein set forth it has established a secondary meaning of the term "Fairway", that it has been doing business within this state and, as the name has obtained a secondary meaning within California by virtue of plaintiff's activity here, the exclusive right to use of the name belongs to it.

It seems to the court that plaintiff's claim is not good with reference to the establishment of its right in California, for it appears from the decisions that it is the right of selling and not the right of buying which is important. The prob-

lem here is not whether the selling public has been misled but whether the buying public has been, and there is not one iota of evidence in this case to indicate that one, single purchaser has bought merchandise in the Fairway Market at Monterey Park under the mistaken belief that it was plaintiff's product. In fact, plaintiff was unable to produce a single individual to testify that in making purchases in the Fairway Market in Monterey Park he or she was misled in any particular, and there is nothing herein to indicate defendants at any time have represented to any one that they were a part of or connected with the Fairway Foods, Inc. chain.

Probably the leading case along this line is that of Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, at page 415, 36 S.Ct. 357, at page 361, 60 L.Ed. 713, in which the Supreme Court said:

"* * * In the ordinary case of parties competing under the same mark in the same market, it is correct to say that prior appropriation settles the question. But where two parties independently are employing the same mark upon goods of the same class, but in separate markets wholly remote the one from the other, the question of prior appropriation is legally insignificant; unless, at least, it appear that the second adopter has selected the mark with some design inimical to the interests of the first user, such as to take the benefit of the reputation of his goods, to forestall the extension of his trade, or the like."

This court has already pointed out there is no evidence to sustain a finding that defendants selected the name in question for the purpose of taking the benefit of the reputation of plaintiff's goods or products in this state or to forestall the extension of plaintiff's activities in California.

Another important case along this line is Prestonettes, Inc. v. Coty, 264 U.S. 359, at page 368, 44 S.Ct. 350, at page 351, 68 L.Ed. 731, in which the Court said:

"* * * * A trade-mark only gives the right to prohibit the use of it so far as to protect the owner's good will against the *sale* of another's product as his. * * * When the mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth. It is not taboo. * * *" [Emphasis supplied.]

It will be noted that in the above case the Supreme Court emphasizes the question of sale.

A more recent Supreme Court decision was handed down in Champion Spark Plug Co. v. Sanders, 331 U.S. 125, at page 129, 67 S.Ct. 1136, at page 1138, 91 L.Ed. 1386, which cites the Prestonettes, Inc. case, supra, as follows:

"'A trade-mark only gives the right to prohibit the use of it so far as to protect the owner's good will against the *sale* of another's product as his. * * *'" [Emphasis added.]

And the Court points out there was "no showing of fraud or palming off" in the Champion case, supra; which is the finding of the court in the case at bar.

In San Francisco Ass'n, etc. v. Industrial Aid for Blind, D.C., 58 F.Supp. 995, the defendant, without knowledge of plaintiffs' use of the term "Blindcraft" in California used the name in Missouri. The Court pointed out that the adoption of a trademark does not establish its validity. The right of a trademark must grow out of its use. The Court said, 58 F.Supp. at page 998:

"The purpose behind the protection of the adoption and use of trademarks is to protect the owners and users in their respective lines of public relations and to safeguard the *consumer* by preventing the products of some one else being palmed off on him under a like or similar mark." [Emphasis supplied.]

In that case the Court marshals many of the authorities on this particular sub-

ject and, quoting from Sweet Sixteen Co. v. Sweet "16" Shop, Inc., 8 Cir., 15 F.2d 920, 923, says:

"'* * * the general rule is that, while the first appropriator and user of a trademark owns such mark and is entitled to protection by the courts in the use thereof, against subsequent users on the same class of goods, such protection will not be afforded *as against a subsequent user and appropriator, who in good faith adopts* and uses the mark in territory into which the goods of the first appropriator have not penetrated and have not been used or sold. (Emphasis added.)

\* \* \* \* \* \*

"'That the right to protection in the exclusive use of a trade-mark extends only to those markets where the trader's goods have become known and identified by his use of the mark; * * *.'"

It is the opinion of this court that defendants have brought themselves within the rule as laid down in the Sweet Sixteen Co. case, supra. There is no doubt defendants are subsequent users and appropriators of the word or term "Fairway." However, the court is of the opinion the appropriation was in good faith and was adopted in a territory in which the goods of the first appropriator had not penetrated and had not been used or sold. As far as sale is concerned, there is no evidence that plaintiff and defendants are competing in the local market in sales of merchandise.

The Supreme Court in United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141, dealt with this particular question. The action involved use of the name "Rex" or "Rectanus", and the Court pointed out, 248 U.S. at page 95, 39 S.Ct. at page 50:

"* * * There is nothing to show that before this any customer in or near Kentucky had heard of the Regis remedy, with or without the description 'Rex,' or that this word ever possessed any meaning to the purchasing public in that state * * *.

\* \* \* \* \* \*

"* * * The law of trade-marks is but a part of the broader law of unfair competition; the right to a particular mark grows out of its use, not its mere adoption; its function is simply to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his; * * *.

\* \* \* \* \* \*

"* * * It would be a perversion of the rule of priority to give it such an application in our broadly extended country that an innocent party who had in good faith employed a trade-mark in one state, and by the use of it had built up a trade there, being the first appropriator in that jurisdiction, might afterwards be prevented from using it, with consequent injury to his trade and good will, at the instance of one who theretofore had employed the same mark, but only in other and remote jurisdictions, upon the ground that its first employment happened to antedate that of the first-mentioned trader.

\* \* \* \* \* \*

"* * * Mrs. Regis and her firm, having during a long period of years confined their use of the 'Rex' mark to a limited territory wholly remote from that in controversy, must be held to have taken the risk that some innocent party might in the meantime hit upon the same mark, apply it to goods of similar character, and expend money and effort in building up a trade under it; and since it appears that Rectanus in good faith, and without notice of any prior use by others, selected and used the 'Rex' mark, and by the expenditure of money and effort succeeded in building up a local but valuable trade under it in Louisville and vicinity before petitioner en-

tered that field, so that 'Rex' had come to be recognized there as the 'trade signature' of Rectanus and of respondent as his successor, petitioner is estopped to set up their continued use of the mark in that territory as an infringement of the Regis trade-mark."

It appears to this court that the adoption of the word "Fairway" by defendants was without any unlawful design to confuse or mislead the public and that the buying public was neither confused nor misled by use of the name. Even though defendants are subsequent appropriators, nevertheless, as the first appropriator in a new market which had not been used by plaintiff, defendants are entitled to protection.

Judgment is ordered for defendants. Counsel for defendants shall prepare Findings of Fact, Conclusions of Law and Judgment in conformity herewith for presentation to the court on or before June 23, 1953.