**FAIRWAY FOODS, Inc., a Corporation, Appellant,**

v.

**FAIRWAY MARKETS, Inc., and Raisin Markets, Inc., Appellees.**

**No. 14108.**

United States Court of Appeals
Ninth Circuit.

Nov. 9, 1955.

194

L. Glenn Fassett, Minneapolis, Minn., for appellant.

Leonard Horwin, Merle H. Sandler, Wolfson & Essey, Beverly Hills, Cal., for appellees.

Before STEPHENS and FEE, Circuit Judges, and WIIG, District Judge.

STEPHENS, Circuit Judge.

Plaintiff, under the title "Twin City Wholesale Grocer Company" which later changed its title to "Fairway Foods, Inc.", a Minnesota corporation organized in 1914, filed under its original name its complaint for injunction and damages in the United States District Court for the Southern District of California, Central Division, in which complaint it was alleged that defendant Fairway Markets, a California corporation, was infringing its registered trade marks and was practicing unfair competition against it. Thereafter plaintiff by supplemental complaint corrected its title in the action to conform to the change of name. The defendant answered adequately denying the said allegations and cross-complained asking that plaintiff be enjoined from using the word "Fairway" upon its threatened entry into the territory in which defendant was doing business under the name of "Fairway Markets".

The district court denied relief to plaintiff and awarded injunctive relief to defendant against plaintiff in one inclusive judgment. 118 F.Supp. 840. The plaintiff is here appealing from the judgment in toto.

In order to minimize confusion as to the party being referred to in the course of this opinion we shall generally refer to the parties as plaintiff and defendant.

Plaintiff, a wholesale grocery concern, is the owner of eight certificates of national registration for its trade mark, the word "Fairway", for food and food products. Under such mark it provides foodstuffs at volume wholesale prices to over 1250 "Fairway" stores which sell the foodstuffs under the label "Fairway" in over one thousand cities and towns throughout the states of Minnesota, North and South Dakota, Wisconsin, and Iowa, but not elsewhere. It purchases canned and packaged foodstuffs from suppliers in various states, including California, under its label "Fairway". It maintains its principal office and warehouse in Saint Paul, Minnesota, and another at Fargo, North Dakota. Its cooperative member and licensee stores are generally small, independent owner-operated markets which are conducted as "Fairway Market", "Fairway Foods", or other style featuring the word "Fairway". Since 1923 plaintiff has been purchasing large quantities of its merchandise labeled with its "Fairway" mark from California manufacturers, canners, packers, and brokers under its original name but under its new title since its adoption. It will be important to note that plaintiff has not and never has had any outlet for its merchandise in California, nor within 1500 miles of defendant's one seat of business.

Defendant, a California corporation, has since August 16, 1951, operated a retail food super market in Monterey Park, California, under the name and style of "Fairway Market". By means of local radio and newspapers, defendant advertises its market and its merchandise. It sells no canned or boxed goods under the mark or brand of "Fairway" but does label its delicatessen wrappings with the words "Packed by Fairway Market, Monterey Park, California". The word "Fairway" on these wrappings is printed in block capitals approximately twice the size of that of the other quoted words. Defendant's merchandise is sold solely to personal shopper consumers from its one store at Monterey Park which is situated several miles easterly from the City of Los Angeles, and it has no customers and sells no merchandise outside of Los Angeles County, California, and its customers are almost exclusively residents of the easterly one-half of that county.

At the trial, defendant's officers testified that they had no knowledge of plaintiff's existence or of the latter's use of the word "Fairway", and that their (defendant's) use of the name was prompted

by the location of the market on the fairway of an abandoned golf course, coupled with the idea that the name suggests fair dealing.

 The evidence without conflict supports the trial court's finding [1] that there has been no confusion and that there is no likelihood of confusion because of the use by both parties of the word "Fairway". Neither party sells or tries to sell to any customer who buys from the other party. Neither party sells or tries to sell or offers to sell anything within the same territory that the other does business. There is absolutely no competition between the parties. Perhaps the most important element of unfair trade is that there be competition in the sale of like merchandise and that there is, or is likelihood of, confusion as to which competitive article is being purchased. It is true that unfair trade may result from the dilution of the business good will in ways not connected directly with the possible loss of a sale through deception or confusion, and this phase of unfair trade is well stated in Yale Electric Corp. v. Robertson, 2 Cir., 1928, 26 F.2d 972, at page 974:

"However, it has of recent years been recognized that a merchant may have a sufficient economic interest in the use of his mark outside the field of his own exploitation to justify interposition by a court. His mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask. And so it has come to be recognized that, unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful. [Citing cases.]"

See, also, Stork Restaurant, Inc., v. Sahati, 9 Cir., 1948, 166 F.2d 348. There is a finding in this case that no such dilution was or is present in the instant case.[2] See United States v. Wrightwood Dairy Co., 1942, 315 U.S. 110, 62 S.Ct. 523, 86 L.Ed. 726.

 It is not a convincing argument that because radio advertising and newspaper advertising are not physically contained within state lines, someone in the territory wherein plaintiff sells groceries might be induced thereby to buy some groceries from defendant or that such person might in so doing mistakenly think he was buying of plaintiff or buying plaintiff's goods. Upon the clearest principles, no case whatever has been made out in support of plaintiff's allegation that defendant is engaging or has engaged in any unfair competition or trade as to plaintiff or that defendant's conduct, if continued unchanged, is likely to have any such effect, unless by operation of The Lanham Trade-Mark Act.[3]

### The Trade-Mark Issue

It is the contention of plaintiff that by reason of its registration of "Fairway" as a trade-mark for food products, it possesses an exclusive right, under The Lanham Trade-Mark Act of 1946,[4] to the exclusive use of the word "Fairway" as a trade-mark for food products throughout the entire country.

The earliest attempt of Congress to regulate trade-marks was based upon the Constitutional provision for patents and

1. Finding of Fact XX, Record on Appeal p. 66. Also, Finding of Fact XXI, XXVII, XXVIII, XXIX, XXX, XXXI, and XXXIII in particular, Record on Appeal.

2. Finding of Fact XX, Record on Appeal p. 66; Findings of Fact XXXII and XXXIII, at pp. 70, 71.

3. See Finding of Fact XXXIII, Record on Appeal, p. 71.

4. Title 15 U.S.C.A. § 1051 et seq., July 5, 1946, c. 540, Title I, § 1 et seq., 60 Stat. 427 et seq.

copyrights,[5] but since the In re Trade-Mark Cases, 1879, 100 U.S. 82, 25 L.Ed. 550, it has been established that Congress gains its power over trade marks under the Commerce clause [6] of the Constitution and therefore is limited to trade between the states, foreign countries, and Indian tribes. We do not conclude that The Lanham Act changes the general principles of unfair trade, as they are recited in Hanover Star Milling Co. v. Metcalf, 1915, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713. Comprehensive trade mark legislation was enacted in 1905 and was bolstered from time to time by major amendments, and, because of the countrywide rapid commercial expansion, revamping of the trade-mark laws became necessary in order to supplement the several states' legislation as to fair dealing in the market place. Hence, Congress enacted The Lanham Trade-Mark Act in 1946 [7] by which Congress intended to:

"* * * regulate *commerce* within the control of Congress by making actionable the deceptive and misleading use of marks in such *commerce;* to protect registered marks used in such *commerce* from interference by State, or territorial legislation; to protect persons engaged in such *commerce* against unfair competition; to prevent fraud and deception in such *commerce* by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trade-marks, trade names, and unfair competition entered into between the United States and foreign nations." [Emphasis added] § 1127 of Title 15 U.S.C.A.[8]

The Act then, as to the reach of a registered trade-mark extends protection only in interstate or foreign commerce. The scope of the Congressional control of commerce is undoubtedly broad, extending as it does, not only to transactions which can be deemed to be essential parts of a flow of interstate commerce but also to activities intrastate in character which are possessed of a close and substantial relation to interstate commerce.[9] However, as was well said in N. L. R. B. v. Jones & Laughlin Steel Corp., 1937, 301 U.S. 1, 37, 57 S.Ct. 615, 624, 81 L.Ed. 893:

"* * * the scope of this power must be considered in the light of our dual system of government and may not be extended so as to embrace effects upon interstate commerce so indirect and remote that to embrace them, in view of our complex society, would effectually obliterate the distinction between what is national and what is local and create a completely centralized government."

While it is true that activities which in isolation might be deemed local, may affect commerce due to interlacings of business across state lines, in absence of a showing that the business is part of a coordinated interstate system substan-

5. Article I, § 8, Clause 8 of the Constitution of the United States, which reads: "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."

6. Article I, § 8, Clause 3 of the Constitution of the United States, which reads: "To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."

7. Title 15 U.S.C.A. § 1051 et seq., July 6, 1946, c. 540, Title I, § 1 et seq., 60 Stat. 427 et seq.

8. July 5, 1946, c. 541, Title X, § 45, 60 Stat. 443. For commentary and historical data on The Lanham Trade-Mark Act of July 5, 1946, 60 Stat. 427, see Title 15 U.S.C.A. foll. § 1024 at p. 265.

9. N. L. R. B. v. Jones & Laughlin Steel Corp., 1937, 301 U.S. 1, 37, 57 S.Ct. 615, 81 L.Ed. 893; United States v. Darby, 1941, 312 U.S. 100, 118, 61 S.Ct. 451, 85 L.Ed. 609.

tially affecting commerce,[10] the activities of retail grocers purchasing and selling their wares exclusively intrastate are not a permissible field for Congressional regulation under the Commerce power.

The finding of the district court in our case was that "[d]efendants purchase all of their food and other products and sell all of their food and other products, within the County of Los Angeles, State of California. Defendants advertise exclusively to the buying public located in the County of Los Angeles, State of California, and said advertising is conducted exclusively through local newspapers, throw-sheets, post cards, radio broadcasts, promotional sales and other advertising made, published or circulated within said County." [11]

The Validity of the Trade-Mark Statute

There is much discussion in the briefs pro and con as to whether the word "Fairway" is a proper subject of a trademark. That question seems to lurk also in the pleadings and in the Findings of Fact, but there is a lack of a forthright attack upon the validity of the registered trade-marks and there is no sufficient finding or conclusion as to the validity of the marks. We gain from the record that the judgment is based upon the court's view of the law that whether or not the marks are valid under the statute, they do not and cannot be effective as against defendant for the reason that the facts of the case do not show any competition or likelihood of competition or dilution of plaintiff's good will, and do not touch interstate or foreign commerce.[12]

■ We find no reversible error in the court's conclusion that defendant has not infringed and is not infringing plaintiff's registered trade marks. And that there is no competition or likelihood of competition between the parties, for the reason that the facts do not bring the mark into issue.

Injunction Against Plaintiff

■ There remains for disposition on this appeal, the injunction which enjoins plaintiff from using the word "Fairway" in the territory now occupied by defendant, should plaintiff at some time in the future act upon its asserted intention of extending its business into such territory. Government by injunction is never favored, and the discretion of the chancellor in favor of granting the writ is withheld except to prevent impending injury or wrong, and is not granted upon indefiniteness and remote possibilities. No present impending injury can be found in this case. It may well be that if and when plaintiff acts to carry out its expressed intention to expand into the territory presently occupied by defendant, the facts will be sufficiently different from those of the instant case as to commerce and otherwise, and as to the validity of the claimed trade-mark, as to present additional and different issues.

We discern no relevant conflict between the principles expressed in this opinion and those applied in the case of Stork Restaurant, Inc., v. Sahati, 9 Cir., 1948, 166 F.2d 348, or in any other opinion of this court.

The judgment is affirmed as to that part thereof which denies relief to plaintiff-appellant on its complaint, and is reversed as to that part thereof which enjoins plaintiff on defendant's cross-complaint as to plaintiff's future action, and the district court is ordered to dismiss the cross-complaint without prejudice and in accordance with this opinion.

Affirmed in part.

Reversed in part.

10. N. L. R. B. v. Howell Chevrolet Co., 9 Cir., 1953, 204 F.2d 79, 82; Capital Service v. N. L. R. B., 9 Cir., 1953, 204 F. 2d 848, 851; Katz v. N. L. R. B., 9 Cir., 1952, 196 F.2d 411, 413; N. L. R. B. v. Townsend, 9 Cir., 1950, 185 F.2d 378, 382; N. L. R. B. v. Ken Rose Motors Inc., 1 Cir., 1952, 193 F.2d 769, 771.

11. See Finding of Fact XVII, Record on Appeal p. 64.

12. See Title 15 U.S.C.A. § 1127, July 5, 1946, c. 541, Title X, § 45, 60 Stat. 443.