**UNITED STATES of America, Plaintiff,**

v.

**VARIOUS ARTICLES OF OBSCENE MERCHANDISE, SCHEDULE NO. 1844, Defendant in Rem.**

**No. 79 Civ. 4399(PNL).**

United States District Court, S. D. New York.

Nov. 28, 1979.

Leslie R. Bennett, Asst. U.S. Atty., New York City, for plaintiff.

## MEMORANDUM

LEVAL, District Judge.

This action raises the question whether concededly innocent, non-obscene and inoffensive books and other matter are required to be condemned, forfeited and destroyed if they were imported into the United States in a package together with any obscene article. As surprising as the proposition may seem, the government contends that this conclusion is required by the terms of the act of Congress providing for the forfeiture of obscene matter imported from abroad. Tariff Act of 1930, 19 U.S.C. § 1305 (1978). The government argues that the reviewing judge has no power or discretion to permit the entry into the United States of such inoffensive material or do otherwise than order its destruction upon a finding that upon importation it shared a package with obscene matter.

The United States brought this action under § 1305 for the forfeiture of various allegedly obscene items which were seized by the Customs Service upon importation through the mails during August of this year. Judgment was entered on Oct. 16, 1979 ordering the forfeiture and destruction of all of the items submitted with the exception of one magazine and two order forms which were enclosed in Lot No. 11100/001. The government then moved for an amendment of the earlier judgment. With respect to the magazine, the government argued that the court erred in failing to find it obscene. As to the two order forms (and the magazine), the government argued that irrespective of their obscene or non-obscene character, they are required to be forfeited under the terms of § 1305 because they were imported in the same package with another magazine which this court determined to be obscene in the October 16 judgment.

On the return date of the motion, the government advised that it wished to withdraw the part of the motion which challenged the admission of the non-obscene items on the basis of the "same package" theory. When asked at the submission whether this indicated a change of position or simply a decision not to press the issue in this litigation, the Assistant indicated the latter.

Since the motion addressed to the order forms is withdrawn, I am not required to pass on it. On the other hand, being advised of the government's contention that the statute forbids the entry of inoffensive matter packaged together with the obscene, I must reconsider the legal basis of my earlier judgment.

■ Turning first to the government's motion for reconsideration of the obscene character of the magazine, I find on reexamination that the government's position is well taken. I conclude that the magazine flunks all of the tests set forth in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). Accordingly, it is ordered forfeited and destroyed in accordance with § 1305.

■ I now turn to reconsider my judgment on the order forms in the light of the government's reading of the statute. I find no reported decisions in this circuit considering the question. In fact the government points to only one federal court opinion decision on the subject, Judge Sweigert's decision in *United States v. 18 Packages of Magazines*, 227 F.2d 198 (N.D.Cal. 1963), which rejected the government's contention.[1]

---

1. The government's contention that this circuit ruled the other way in *United States v. Various Articles of Obscene Merchandise, Schedule No. 1303*, 562 F.2d 185, 185-86 (2d Cir. 1977), *cert. denied*, 436 U.S. 931, 98 S.Ct. 2831, 56 L.Ed.2d 776 (1978) incorrectly describes that opinion. The case dealt with entirely different questions arising under § 1305. It never considered the question here in issue. At the start of his opinion, Judge Moore briefly paraphrases the thrust of the statute, citing language which the government contends supports its point of view. In no sense can this passing reference be deemed a holding of the Second Circuit on the issue in question. What's more, even if it were, it would not require the conclusion that

I find, as did Judge Sweigert, that the government's position is contradicted by the language of the statute, its purpose and its history. The government's interpretation of the statute would also raise serious questions of its compatibility with the first amendment.

The language of the statute, first of all, seems to command the opposite conclusion. The statute begins by prohibiting the importation of obscene matter. It goes on to state that no obscene articles shall be admitted to entry. The government relies on the next sentence which states that all such obscene articles and (absent special circumstances indicating innocence of the importer) "the entire contents of the package in which such [obscene] articles are contained, shall be subject to seizure and forfeiture as hereinafter provided: . . . ." The government apparently contends that those quoted words constitute a command for the forfeiture of the other items enclosed in a package with obscene merchandise. First of all, this argument misreads the language, which merely makes such items *subject to seizure and forfeiture*"; it does not command their forfeiture. More importantly, however, the government's argument overlooks the presence of the words "as hereinafter provided" and the subsequent provisions of the statute. The statute goes on to require the customs office to notify the district attorney who in turn is instructed to institute proceedings in the district court for forfeiture. Finally, the statute states, "Upon the adjudication that such book or matter thus seized is of the character the entry of which is by this section prohibited, it shall be ordered destroyed and shall be destroyed. *Upon adjudication that such book or matter thus seized is not of the character the entry of which is by this section prohibited, it shall not be excluded from entry under the provisions of this section.*" (emphasis supplied) These words seem to me to contemplate an adjudication by the district court as to which of the seized materials are obscene and therefore

are to be destroyed, and which of the materials seized are not obscene and therefore "shall not be excluded from entry".

The collector of customs unquestionably is authorized to detain the entire contents of any package found to contain apparently obscene matter. But it does not follow that the inoffensive contents of the package must be destroyed upon an adjudication that any single item contained is obscene. To the contrary, the statute instructs that each item must be adjudicated on its own merits. See *U. S. v. Various Articles of Obscene Merchandise, Schedule No. 1769*, 600 F.2d 394, 398–400 (2d Cir. 1979), *aff'g in part and reversing on other grounds, U. S. v. Various Articles*, 78 Civ. 4526 (S.D.N.Y. 1978).

To construe the statute in this fashion seems consistent with an apparent logical legislative purpose. Administrative convenience may well justify the temporary detention of an entire package found to contain obscene material without requiring the collector of customs to make an extensive examination justifying the detention of each item found in the package. Such temporary detention to await adjudication is all the more reasonable in the light of the requirement of prompt adjudication commanded by the Supreme Court's decision in *United States v. Thirty-seven (37) Photographs*, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971). A further justification may be in the difficulty for the collector of customs in instances to determine whether the various items in a package are separate and discrete or whether they should be judged together as parts of a single work.

What valid legislative purpose would be served by the interpretation advanced by the government is difficult to understand. While in other times Congress might have felt that other materials had been contaminated by proximity to the offensive matter, *see* Tariff Act of 1842, 5 Stat. 566, that is not likely to have been the prevailing no-

---

the government asserts. For Judge Moore's reference says nothing more than that the contents of the package "are subject to confisca- tion". It does not state that the statute mandates their forfeiture.

tion in 1930. If the provision were thought to have a punitive purpose, as arguably suggested by the exemption for innocent matter where obscene matter was "inclosed . . . without the knowledge or consent of the importer, owner, agent, or consignee" (a provision dating from an 1890 revision, 26 Stat. 615; *see U. S. v. 18 Packages, supra,* at 206), its operation would be unreasonably arbitrary and capricious. The extent of the penalty would turn capriciously on the manner of packaging; it would not be influenced by degrees of culpability or offensiveness. The arbitrariness is all the more egregious in view of the fact that the statute, as interpreted by the government, would be mandatory and admit of no equitably motivated exercise of discretion by either the judge, the United States Attorney or the collector of customs.[2]

It is arguable, I suppose, that the government's interpretation can be justified by administrative convenience. While it is true that universal destruction would spare not only the collector of customs but also the United States Attorney and the court from the tedious task of separating the offensive from the inoffensive, such a legislative judgment would represent a highly questionable assessment of relative values. Where the offensive matter is packed together with materials of a type which are not entitled to first amendment protection, as where an obscene magazine is packed in a traveler's suitcase together with his clothing, it would seem sufficiently easy to distinguish the obscene from the non-obscene that no substantial administrative convenience would be served by requiring destruction of the suits, shirts, ties and shoes. Where, on the other hand, the obscene literature is packed together with books or other literary or communicative material entitled to first amendment protection, constitutional interests disfavoring blind censorship seem too important to yield to simple administrative or judicial time saving.

It is difficult to discern any apparent or probable legislative purpose supporting the government's interpretation.

Statutory history extensively reviewed in Judge Sweigert's opinion also disfavors the government's position. If this controversy were taking place in the mid-nineteenth century under the statutes then prevailing, the government's position would be well taken. The Tariff Act of 1842 expressly and clearly commanded the destruction, not only of obscene matter, but of "all . . . packages whereof any such articles shall compose a part . . .." 5 Stat. 567. However the statute has undergone numerous changes since 1842. It is not altogether clear which of the various revisions discussed by Judge Sweigert effectively revoked the command that all articles packed together be destroyed. It is clear, however, that at least the most recent enactment passed in 1930, with its requirement quoted above that the district judge distinguish between the materials which are and are not prohibited, has completely abandoned the mid-19th century approach and requires separate consideration of each item seized. *See* Congressional Record, Vol. 72, Part 5, 71st Cong. 2d Sess. p. 5518 (debates).

If there were any apparent substance to the government's contention as to the intended meaning of the statute, it would raise serious questions of conflict with the first amendment. In view of my rejection of this construction, I need not discuss the constitutional issues. I do pause to note in passing some particularly troubling consequences of the government's position. The only copy of an important unpublished literary manuscript would be lost if it travelled in bad company. Bibles would be burned. Valuable and culturally important works of art would be destroyed if packed with an obscene work not found to have artistic merit. New packing methods designed to reduce labor costs result in the shipping of

---

**2.** This is not an instance where Congress reasonably could have concluded that seizure and forfeiture were mandated by, respectively, the legitimate needs of law enforcement officials and the vital role played by the seized property in the attempted importation of the contraband property, *see* 49 U.S.C. § 782 (allowing for seizure and forfeiture of vehicles, vessels, or aircraft used to conceal or transport contraband).

huge quantities of merchandise in a single sea/land container. *See generally Leather's Best, Inc. v. S. S. Mormaclynx*, 451 F.2d 800 (2d Cir. 1970). It is appalling to think of the thousands of books which will be burned if they are so indiscreet as to share a container with a bawdy number on a trans-Atlantic voyage.

I conclude that § 1305 does not require forfeiture of non-obscene matter by reason of its inclusion in a package together with an obscene item. To the contrary, in my view it requires separate adjudication of each seized item and requires non-obscene matter to be admitted to entry.

[3] My discussion above of the difficulties which the customs inspector may experience in deciding whether apparently separate items are truly separate or constitute parts of a whole suggests another question to be considered in determining the fate of the order forms, i. e., whether the order forms should properly be considered separate items or part of the magazines they came with. Each order form appears to have been inserted and rolled up in the magazine during shipment. This is confirmed by the presence of 2 order forms together with 2 magazines in one packet addressed to a single addressee. I conclude that these order forms, although not stapled into the magazines, were nonetheless a part of the magazines they were enclosed in, as is the subscription blank frequently found enclosed in conventional American magazines. They are not to be considered as other distinct items enclosed in the same package but as part of the obscene magazine itself. Accordingly, I find that each should be forfeited together with the magazine it was enclosed in.

If I were wrong in considering them part of the obscene magazine, I would require that they be admitted and forwarded to the addressee in accordance with this opinion.

Finally I must consider whether the 60 day final adjudication rule imposed by the Supreme Court in *Thirty-seven (37) Photographs, supra*, prohibits this amendment of the judgment more than 60 days after the institution of the action. I conclude that it does not. The rule is not an absolute rigid bar to the retention of detained materials beyond the 60th day. The taking of an appeal, for example, will inevitably cause delays substantially beyond the 60 day limit. *See U. S. v. Various Articles, supra*, 600 F.2d at 397–98 n.6. I believe that a motion for reconsideration made in good faith and not for purposes of delay, and in turn adjudicated with reasonable promptness, does not violate the Supreme Court's ruling. *See Order Granting Partial Stay of Judgment, United States v. Various Articles of Obscene Merchandise*, 78 Civ. 4526 (S.D.N.Y.1978).

The judgment of October 16, 1979 is hereby amended in that the entirety of Lot No. 11100/001 is ordered forfeited and destroyed.