COMIDAS EXQUISITOS, INC., Plaintiff,

v.

CARLOS McGEE'S MEXICAN CAFE, INC., Defendant.

Civ. No. 83–600–D.

United States District Court, S.D. Iowa, C.D.

Jan. 11, 1985.

H. Robert Henderson, Henderson & Sturm, Des Moines, Iowa, for plaintiff.

Mark David Hansing, Zarley, McKee, Thomte & Voorhees, Des Moines, Iowa, for defendant.

## MEMORANDUM AND ORDER

HANSON, Senior District Judge.

Plaintiff, Comidas Exquisitos, Inc., brought this action for service mark infringement and related claims against defendant, Carlos McGee's Mexican Cafe, Inc. Defendant has asserted a counterclaim for unfair competition. This action came on for trial to the Court on October 16, 1984. At trial, plaintiff's Exhibits 31, 40 and 41 were received subject to defendant's hearsay objection. The Court now rules these exhibits admissible under the business records exception to the hearsay rule. Rule 803(6), Fed.R.Evid. Defendant's Exhibit E has been used by the Court only as it shows witness Ansani's interest in this action. The Court now enters the following Findings of Fact and Conclusions of Law in support of its judgment.

## FINDINGS OF FACT

1. Plaintiff, Comidas Exquistos, Inc., is a Georgia corporation with its principal place of business in Atlanta, Georgia.

2. Since July 1979, plaintiff has continuously used the service mark CARLOS McGEE'S in connection with restaurant services. In July 1979, plaintiff opened its first "CARLOS McGEE'S BAR GRILL & BAR" in Atlanta, Georgia. Since then plaintiff has opened a second company-owned restaurant and a third under a license agreement, both under the same name and both in the Atlanta metropolitan area. [Hereinafter, the Court will use "plaintiff" to refer to both Comidas Exquisitos, Inc. and its three restaurants.]

3. On September 9, 1980, plaintiff filed application Serial No. 277,241 with the United States Patent and Trademark Office to register its service mark CARLOS McGEE'S for restaurant services. On June 1, 1982, plaintiff's application was granted as Registration No. 1,197,034. Plaintiff is still the owner of this registration.

4. Plaintiff has done a substantial amount of advertising and promotion, much of which has been directed at travelers and some of which has reached Iowa. Plaintiff has in fact served a substantial number of travelers, including some from Iowa. Approximately 20 percent of plaintiff's customers have been from outside the Atlanta area.

5. Defendant, formerly Carlos McGee's Mexican Cafe, Inc., now O'Malley & McGee's Mexican Cafe, Inc., is an Iowa corporation with its principal place of business in Ames, Iowa.

6. Defendant was originally incorporated under the name "Carlos McGee's Mexican Cafe, Inc." on June 19, 1980. Defendant opened a restaurant in Ames, Iowa under the name "Carlos McGee's Mexican Cafe" in January of 1981. [Hereinafter, the Court will use "defendant" to refer to both the corporate party and its restaurant.]

7. Defendant is now in the process of changing its name. Since this action was filed, defendant has changed its sign, menus, and corporate name to "O'Mally & McGee's." Defendant's liquor and food licenses are still in the name "Carlos McGee's."

8. Defendant has done virtually no advertising or promotion, relying instead on word of mouth. Defendant has admitted that it has served interstate travelers, including persons who had seen one or more of plaintiff's restaurants. However, there is no evidence to suggest that defendant has ever served substantial numbers of interstate travelers, in absolute or percentage terms.

9. Defendant was aware of use of the name "Carlos McGee's" for a restaurant in the Atlanta area before it opened its restaurant. Defendant adopted the name because it found it "catchy." In everything other than its name, defendant's restaurant was based on a "Dos Amigos" restaurant in Steamboat Springs, Colorado. Consistent with this, the evidence shows a number of differences between plaintiff and defendant. Both plaintiff and defendant serve Mexican food, but plaintiff is a "Tex-Mex" restaurant featuring such "Tex" items as steak and smoked ribs in addition to Mexican food. Defendant, on the other hand, is a standard Mexican restaurant with a few items on the menu "from the other side of the border." Though both plaintiff and defendant serve liquor, defendant's bar is subsidiary to its restaurant while plaintiff's bar has a life of its own: defendant is a restaurant with a bar, while plaintiff is a restaurant and a bar. This difference is advertised in plaintiff's and defendant's names. Plaintiff refers to itself as a "bar · grill & bar" while defendant refers to itself as a "cafe." Further, the logos used by plaintiff and defendant are very different, both in appearance and in the image they convey. Copies of plaintiff's and defendant's logos are attached hereto. Finally, as illustrated by their logos, plaintiff and defendant differ in atmosphere or "personality." Plaintiff's personality is sophisticated, up-scale, and cosmopolitan, while defendant is simple, unpretentious, and provincial.

10. The market areas of plaintiff and defendant have always been, and still are, geographically separate. Plaintiff's market has been limited to the Atlanta, Georgia metropolitan area, and defendant's market has been limited to the Ames, Iowa area.

11. At no time has there been a present likelihood that plaintiff would enter defendant's market area.

12. Plaintiff has never had a general reputation in defendant's market area.

13. Defendant's use of "Carlos McGee's" has not, at any time, caused a

real, present likelihood of confusion in the marketplace.

Magistrate Longstaff was right, in his order denying defendant's motion for summary judgment, when he predicted that "plaintiff may have considerable difficulty" proving its case. If all the evidence presented at trial were presented on a motion for summary judgment, this Court believes it could grant the motion. The basic facts of this case are substantially undisputed. The parties agree about who did what when. There is a great deal of apparent dispute as to whether defendant's use of "Carlos McGee's" has caused a likelihood of confusion. However, when the nature of that issue is properly understood, it appears that there is no genuine issue of fact on that score either.

Defendant's use of "Carlos McGee's" certainly made the parties' names confusingly similar when considered in the abstract. Further, the Court does not doubt that plaintiff's and defendant's use of "Carlos McGee's" could cause confusion under some circumstances. However, to the present, defendant's actual use of "Carlos McGee's" has not, at any time, caused a real, present likelihood of confusion in the marketplace.

For there to be a real, present likelihood of confusion, there must be someone in a position to be confused—some point of contact between plaintiff's and defendant's use of "Carlos McGee's." *Unicure, Inc. v. Nelson*, 502 F.Supp. 284, 287 (W.D.N.Y.1980), ("Some overlap between the parties' trademark usage must exist before a likelihood of confusion ... can be found.") In the typical case, this point of contact is provided by overlap between the parties' market areas. However, as found above, plaintiff and defendant have occupied geographically separate market areas. Plaintiff has argued that it has a national market area because it serves travelers from all over, seeks a national reputation, and hopes to expand throughout the nation. However, the relevant market area is the area within which plaintiff competes for customers with other restaurants. *See Holiday Inns of America, Inc. v. B & B Corp.*, 409 F.2d 614, 617 (3d Cir.1969) (plaintiff would be entitled to relief if plaintiff's and defendant's names were "at large in the same market to compete for the same customers"); *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 364 (2d Cir.1959) (finding of small market areas for donut shops based on fact that "purchasers of baked goods, because of the perishable nature of such goods, usually make such purchases reasonably close to their homes"); *Fairway Foods, Inc. v. Fairway Markets, Inc.*, 227 F.2d 193, 196 (9th Cir.1955) (no likelihood of confusion where "neither party sells or tries to sell to any customer who buys from the other party.)" *See generally*, J. McCarthy, *Trademarks and Unfair Competition*, § 2:12, § 23:1 at 46–48 (1984) [Hereinafter cited as McCarthy]. It is clear that plaintiff competes for customers with other restaurants only in the Atlanta metropolitan area.

In cases involving geographically separate markets, courts have found a basis for a likelihood of confusion where there is a present likelihood that plaintiff will enter defendant's market area and where plaintiff has a general reputation in defendant's market area. *See John R. Thompson Co. v. Holloway*, 366 F.2d 108 (5th Cir.1966); *Dawn Donut*, 267 F.2d 358; *Fotomat Corp. v. Cochran*, 437 F.Supp. 1231, 1237, 1245 (D.Kan.1977); McCarthy § 26:13–15. *Cf.* McCarthy § 26:1–12 (pre-Lanham Act Law). As found above, neither of these circumstances have ever been present in this case.

Plaintiff did attempt to show a present likelihood that it would enter defendant's market area by introducing evidence showing its general hopes and plans for national expansion and its actual steps toward expansion in South Carolina, Florida, the Virgin Islands, New York, Texas, Missouri, and Illinois. However, plaintiff introduced no evidence of any concrete plans for entry into defendant's market area, as is required to establish a present likelihood of entry. *See* McCarthy § 26:14. Plaintiff's general

hopes and plans for national expansion are insufficient. *See Holiday Inns,* 409 F.2d 614; *Fairway Foods,* 227 F.2d 193, 198; *Peter Pan Restaurants v. Peter Pan Diner,* 150 F.Supp. 534 (D.R.I.1957).

█ As to plaintiff's reputation in defendant's market area, plaintiff introduced evidence of its substantial advertising, promotion, and publicity, some of which has reached Iowa. Plaintiff also argues from the fact that it serves a substantial number of travelers from all over the United States, including Iowa. Plaintiff no doubt has a broader reputation than the average restaurant. However, plaintiff simply has not shown that its reputation has extended to the Ames, Iowa area. Plaintiff is not the Stork Club, or even the Crab Cooker. *Cf. Lincoln Restaurant Corp. v. Wolfies Restaurant, Inc.,* 291 F.2d 302 (2d Cir. 1961); *Stork Restaurant, Inc. v. Sahati,* 166 F.2d 348 (9th Cir.1948); *The Crab Cooker v. Specialty Restaurants Corp.,* 223 .U.S.P.Q. 233, 235 (C.D.Cal.1983). Plaintiff also argues from the fact that defendant knew of plaintiff's use of "Carlos McGee's" before it opened its restaurant. The fact that defendant knew of plaintiff is insufficient to establish that plaintiff had a general reputation in the Ames area. If it were shown that defendant adopted the name "Carlos McGee's" with intent to trade on plaintiff's reputation, the Court might infer that plaintiff did have a reputation in defendant's market area. *See generally,* McCarthy § 23:30 at 139–49; § 23:32 at 144–45. However, the evidence shows that defendant adopted plaintiff's name because it was "catchy". Given this explanation and the lack of any independent evidence that plaintiff's reputation has extended to the Ames area, the Court is unwilling to infer that defendant intended to trade on plaintiff's reputation and from that infer that plaintiff had a reputation in defendant's market area. *See Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 263 (5th Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980); *beef & brew, inc. v. BEEF & BREW, INC.,* 389 F.Supp. 179, 186 (D.Or. 1974); McCarthy § 23:35.

Plaintiff's best argument for a likelihood of confusion is based on confusion on the part of travelers from Ames to Atlanta. One of plaintiff's former managers testified that on one occasion a group of customers from Iowa told him that they had eaten at "your" restaurant in Ames. This testimony is entitled to little weight. *See Vitek Systems, Inc. v. Abbott Laboratories,* 675 F.2d 190, 193 (8th Cir.1982). Nonetheless, the Court recognizes the possibility of confusion on the part of travelers from Ames to Atlanta, and on the part of other travelers coming into contact with both plaintiff and defendant.

The possibility of confusion on the part of people traveling or moving from one market to another has been ignored in a number of cases finding no likelihood of confusion due to the geographical separation of the parties' markets. *See Safeway Stores, Inc. v. Safeway Quality Foods, Inc.,* 433 F.2d 99 (7th Cir.1970); *Holiday Inns,* 409 F.2d 614; *John R. Thompson,* 366 F.2d 108; *Dawn Donut,* 267 F.2d 358; *Fairway Foods,* 227 F.2d 193; *Snelling and Snelling, Inc. v. Snelling and Snelling, Inc.,* 331 F.Supp. 750 (D.P.R.1970); *Peter Pan,* 150 F.Supp. 534. On the other hand, the possibility of confusion on the part of travelers has been part of the basis for finding a likelihood of confusion in at least three cases. *Tisch Hotels, Inc. v. Americana Inn, Inc.,* 350 F.2d 609 (7th Cir.1965); *The Crab Cooker,* 223 U.S.P.Q. at 236; *The Warehouse Restaurant, Inc. v. The Customs House Restaurant, Inc.,* 217 U.S.P.Q. 411 (N.D.Cal.1982). However, in all these cases the plaintiff had a reputation in the defendant's market area, and in the *Warehouse* case there was also a likelihood that the plaintiff would enter the defendant's market area.

The Court does not doubt that, in a proper case, a likelihood of confusion could be found based solely on confusion on the part of travelers between markets. However, the mere possibility of such confusion, or actual confusion that is de minimis, is insufficient to establish a likelihood of confu-

sion. *See Amstar*, 615 F.2d 252, 263; *AMP, Inc. v. Foy*, 540 F.2d 1181, 1185–86 (4th Cir.1976); *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 804 (9th Cir.1970); McCarthy § 23:1 at 45–46, § 23:2 at 52–53. The danger of confusion must be sufficiently substantial to constitute a *"likelihood"* of confusion. *See McGregor-Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1130, 1138 (2nd Cir.1979); *American Assoc. for the Advancement of Science v. Hearst Corp.*, 498 F.Supp. 244, 258 (D.D.C.1980); McCarthy § 23:1 at 44–46.

The argument for a likelihood of confusion based on confusion on the part of travelers is strongest in a case like *Tisch Hotels*, 350 F.2d 609, where the parties were both hotels. As the *Tisch* court noted, "by the very nature of their business [hotels] are seeking to attract the traveling public." 350 F.2d at 613. Plaintiff attempts to make itself look like a hotel by emphasizing that it is located in a major city; that it does substantial advertising and promotion, much of which is directed at travelers; and that it does in fact serve a substantial number of travelers. Plaintiff's case would be stronger if the defendant were more like plaintiff in these respects. In that case defendant's use of "Carlos McGee's" might pose a danger of confusion among frequent travelers that would be sufficiently substantial to constitute a likelihood of confusion. *Cf. The Crab Cooker*, 223 U.S.P.Q. at 236. However, defendant is essentially a local restaurant in a relatively small city over 700 miles from plaintiff. It is difficult to imagine that such a restaurant could pose a danger of confusion with plaintiff sufficiently substantial to constitute a likelihood of confusion.

Plaintiff's argument from confusion on the part of travelers would also be strengthened if defendant were more like plaintiff in other ways. However, this is not a case where the defendant has copied the "concept" or the details of the plaintiff's restaurant. *Cf. The Crab Cooker*, 223 U.S.P.Q. at 236. As found above, there are a number of specific differences between plaintiff and defendant. These differences would not be controlling if plaintiff and defendant were across the street from each other or if plaintiff had a reputation in defendant's market area. However, the differences between plaintiff and defendant are relevant here because they make it less likely that a traveler coming into contact with both would think that plaintiff and defendant are related. *Cf. John R. Thompson*, 366 F.2d 108, 111–12; *The Crab Cooker*, 223 U.S.P.Q. 233, 236; *Berghoff Restaurant Co., Inc. v. Lewis W. Berghoff, Inc.*, 357 F.Supp. 127, 130–31 (N.D.Ill.1973) *aff'd*, 499 F.2d 1183 (7th Cir. 1974).

Looking at all the evidence, the Court finds that, in this case, the possibility of confusion on the part of travelers is not sufficiently substantial to constitute a likelihood of confusion, even assuming that there has been some actual confusion on the part of travelers. *Cf. Sun Banks of Florida, Inc. v. Sun Federal Savings and Loan Assoc.*, 651 F.2d 311 (5th Cir.1981); *Amstar*, 615 F.2d 252; *Holiday Inns*, 409 F.2d 614; *Sweetarts v. Sunline, Inc.*, 436 F.2d 705 (8th Cir.1971); *beef & brew, inc.*, 389 F.Supp. 179.

Plaintiff's president and sole owner and its general counsel testified that potential investors in Carlos McGee's franchises outside the Ames area backed out or demanded better terms when they found out about defendant. The Court gives little weight to this testimony because of the obvious interests of the witnesses. The only corroborating testimony from investors offered was the testimony of two men who allegedly backed out of Illinois franchises but did invest in the third Atlanta Carlos McGee's (allegedly on better terms because of defendant). This testimony adds little weight to plaintiff's case because of the witnesses' interests in the third Atlanta Carlos McGee's. However, even assuming that potential investors did back out or demand better terms because of defendant, that does not show a likelihood of confusion. As to the investors themselves, there is no evidence to suggest that they were con-

fused by defendant's use of "Carlos McGee's". On the contrary, plaintiff's evidence shows that they were acutely aware there was no relationship between plaintiff and defendant. Nor do the alleged concerns of potential investors' about defendant constitute evidence of a real, present likelihood of confusion on the part of others. When the two investors who testified were asked why they were concerned about defendant, they did not state that defendant's use of "Carlos McGee's" would cause confusion or reduce the value of the "Carlos McGee's" name to them. Rather, they stated that they did not want to invest in a Carlos McGee's if another restaurant using the same name could follow them into their market.

Based on all the evidence, the Court finds that defendant's use of "Carlos McGee's" has not, at any time, caused a real, present likelihood of confusion in the marketplace.

## CONCLUSIONS OF LAW

*Plaintiff's Claims*

Plaintiff asserts claims under the Lanham Act for service mark infringement and false designation of origin, description, or representation, 15 U.S.C. §§ 1114, 1125; under the common law for unfair competition; and under § 548.11.2 of the Iowa Code for injury to business reputation or trade name, and service mark dilution. Plaintiff bases all its claims solely on defendant's use of "Carlos McGee's." Plaintiff does not challenge defendant's use of "O'Malley & McGee's."

The Court has jurisdiction over plaintiff's claims under 28 U.S.C. § 1338 and the Court's pendant jurisdiction.

■ Likelihood of confusion is an essential element of plaintiff's Lanham Act claims and its common law unfair competition claim. *See Amstar*, 615 F.2d 252; *Safeway Stores, Inc. v. Safeway Properties, Inc.*, 307 F.2d 495 (2d Cir.1962); *Emerson Electric Co. v. Emerson Quiet Kool Corp.*, 577 F.Supp. 668 (E.D.Mo.1983); *The Warehouse Restaurant*, 217 U.S.P.Q. 411;

*Bowman Instrument Corp. v. Continental Microsystems, Inc.*, 497 F.Supp. 947 (S.D.N.Y.1980); 15 U.S.C. § 1114; McCarthy, § 2:3. To establish a likelihood of confusion it is not sufficient that the parties' marks are confusingly similar in the abstract or that the marks could cause confusion under some circumstances. Rather, for there to be a likelihood of confusion, the parties' marks, as actually used in the marketplace, must cause a real, present likelihood of confusion in the marketplace. *See Astra Pharmaceutical Products, Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201 (1st Cir.1983); *Amstar*, 615 F.2d 252; *Continente v. Continente*, 378 F.2d 279 (9th Cir.1967); *John R. Thompson*, 366 F.2d 108; *Dawn Donut*, 267 F.2d 358; *Sargent & Co. v. Welco Feed Mfg. Co.*, 195 F.2d 929 (8th Cir.1952); *Berghoff*, 357 F.Supp. 127, *aff'd*, 499 F.2d 1183; McCarthy § 23:1 at 45–46. As found above, defendant's use of "Carlos McGee's" has not, at any time, caused a real, present likelihood of confusion in the marketplace. Therefore, plaintiff cannot prevail on its Lanham Act claims or its common law unfair competition claim.

■ Plaintiff argues that likelihood of confusion is not required to support its claim under § 548.11.2 of the Iowa Code. The Court need not decide this issue because the Lanham Act has pre-empted state trademark law as applied to interstate commerce. *Sargent*, 195 F.2d 929, 935–36; *Mister Donut of America, Inc. v. Mr. Donut, Inc.*, 418 F.2d 838, 844 (9th Cir.1969). Therefore, § 548.11.2 of the Iowa Code cannot enlarge plaintiff's rights under the federal law.

■ Much of plaintiff's argument to this Court has come down to a claim that the alleged adverse effect of defendant on plaintiff's franchising efforts entitles plaintiff to relief. As discussed above, plaintiff claims that potential investors in Carlos McGee's franchises backed out or demanded better terms when they found out about defendant. Two investors testified that they were concerned about investing in a Carlos McGee's if another restaurant using

the same name could follow them into their market. Any such concern on the part of plaintiff's potential investors is unwarranted. Once plaintiff entered a market, it could prevent anyone else from using the name "Carlos McGee's" in that market, since there would then be a real, present likelihood of confusion. *See Holiday Inns,* 409 F.2d at 619; *John R. Thompson,* 366 F.2d at 116; *Dawn Donut,* 267 F.2d at 360. To the present, however, defendant's use of "Carlos McGee's" has not caused a real, present likelihood of confusion. Therefore, the Court cannot, at present, grant plaintiff any relief against defendant. The fact that plaintiff's investors might be more comfortable about the future if the Court could grant present relief against defendant does not give plaintiff the right to such relief.

 Even if plaintiff had shown a likelihood of confusion, the Court doubts that plaintiff would be entitled to any relief. All relief under the Lanham Act is subject to equitable principles. 15 U.S.C. §§ 1116, 1117. The equities in this case strongly favor defendant. The Court believes that defendant adopted "Carlos McGee's" in the good faith belief that it had the right to do so. Defendant did not otherwise copy plaintiff's restaurants. In this suit, defendant has not disputed plaintiff's first use and registration of the service mark CARLOS McGEE'S. Nor has defendant disputed that it could not use "Carlos McGee's" if such use caused a likelihood of confusion. However, defendant has maintained that it was within its rights in using "Carlos McGee's" as it has. Though maintaining this position, defendant has acted in good faith to avoid this lawsuit by changing its name to "O'Malley and McGee's." Defendant's name change moots plaintiff's prayer for injunctive relief. As to damages, plaintiff has not shown that it suffered any damages attributable to any confusion that may have existed in the marketplace. The alleged damage to plaintiff's franchising efforts is too remote from any confusion in the marketplace and too speculative to be a basis for damages, at least under the equities of this case. Finally, as to recovery of defendant's profits, defendant has admitted that it made a profit while using plaintiff's service mark. However, plaintiff has not shown that any of defendant's profit was in any way attributable to its use of plaintiff's service mark. Therefore, the Court would not grant recovery of defendant's profits. Thus, under the equities of this case, the Court believes that plaintiff would not be entitled to any relief, even if plaintiff had shown a likelihood of confusion from defendant's use of "Carlos McGee's."

 Defendant argues that it should be awarded attorneys' fees under 15 U.S.C. § 1117, which provides for attorney fee awards to the prevailing party in "exceptional" cases under federal trademark law. In the context of claims for fees by prevailing defendants, "exceptional" cases are those involving bad faith, frivolous claims, or claims brought for the purpose of economic coercion. *See John R. Thompson,* 366 F.2d at 116; *Scott v. Mego International, Inc.,* 524 F.Supp. 74 (D.Minn. 1981); *Steak & Brew, Inc. v. Beef & Brew Restaurant, Inc.,* 370 F.Supp. 1030, 1038 (S.D.Ill.1974). Despite the weakness of plaintiff's case, the Court cannot say that it involved bad faith, frivolous claims, or claims brought for the purpose of economic coercion. Therefore, defendant will not be awarded attorney fees.

### Defendant's Counterclaim

Defendant has counterclaimed against the plaintiff for what defendant characterizes as "unfair competition." The Court lacks subject matter jurisdiction over this claim.

Defendant asserts jurisdiction under 28 U.S.C. § 1338(b), which provides:

> The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the ... trademark laws.

 This provision does not cover defendant's counterclaim. First, defendant's counterclaim is not "joined with a substantial and related claim under the ... trade-

mark laws" because defendant has made no claim under the trademark laws. Further, defendant's counterclaim cannot properly be characterized as a claim of unfair competition. Defendant's counterclaim is based solely on plaintiff's instigation and maintenance of this action. Therefore, defendant's counterclaim must be treated as a claim of malicious prosecution or abuse of process. *See generally, Sarvold v. Dodson,* 237 N.W.2d 447 (Iowa 1976); Restatement (Second) of Torts §§ 674, 682 (1977).

■ The Court can exercise ancillary jurisdiction over defendant's counterclaim only if it is compulsory, 13 C. Wright, A. Miller, and E. Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3523, 106–09 (1984) [hereinafter cited as Wright & Miller], that is, only if defendant's counterclaim "arises out of the transaction or occurrence that is the subject matter of [plaintiff's] claims." Rule 13(a), Fed.R. Civ.P. However, defendant's counterclaim arises out of the prosecution of this action while the subject matter of plaintiff's claims is defendant's use of the name "Carlos McGee's." Therefore, the Court cannot exercise ancillary jurisdiction over defendant's counterclaim. *See Answering Service, Inc. v. Egan,* 728 F.2d 1500 (D.C.Cir. 1984); *U.S. General Inc. v. City of Joliet,* 598 F.2d 1050 (7th Cir.1979); *Cochrane v. Iowa Beef Processors,* 596 F.2d 254 (8th Cir.), *cert. denied,* 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979); *Harris v. Steinem,* 571 F.2d 119 (2nd Cir.1978).

■ Absent ancillary jurisdiction, defendant's counterclaim requires an independent jurisdictional base. The only jurisdictional base that suggests itself is diversity of citizenship. However, defendant did not plead that the amount in controversy on its counterclaim exceeds $10,000. Nor did defendant introduce any evidence to show that the amount in controversy on its counterclaim exceeds $10,000. Therefore, the Court cannot assert jurisdiction over defendant's counterclaim. 28 U.S.C. § 1332; Rule 8(a)(1), Fed.R.Civ.P.; *Haley v. Childers,* 314 F.2d 610 (8th Cir.1963); 5 Wright

& Miller § 1214; 14 Wright & Miller § 3702 at 372, § 3706 at 451–54.

The Court has realized that it lacks jurisdiction over defendant's counterclaim only after hearing all of defendant's evidence on its counterclaim. Therefore, the Court thinks it appropriate to comment that, if it had jurisdiction, if it would find that defendant has not shown the malice necessary for malicious prosecution or the improper purpose necessary for abuse of process. *See Sarvold,* 237 N.W.2d 447.

## ORDER OF JUDGMENT

IT IS ORDERED that judgment be entered for defendant on all plaintiff's claims.

IT IS FURTHER ORDERED that defendant's counterclaim be dismissed for lack of subject matter jurisdiction.