**AMSTAR CORPORATION,**
**Plaintiff-Appellee,**

v.

**DOMINO'S PIZZA, INC. and Atlanta Pizza, Inc., Pizza Enterprises, Inc. and Pizza Services, Inc., Hanna Creative Enterprises, Inc., Defendants-Appellants.**

No. 79–3650.

United States Court of Appeals,
Fifth Circuit.

April 8, 1980.

Rehearing and Rehearing En Banc
Denied May 2, 1980.

Browne, Beveridge, DeGrandi, Kline & Lunsford, Julius R. Lunsford, Jr., J. Rodgers Lunsford, III, Atlanta, Ga., Cooper, Dunham, Clark, Griffin & Moran, Gerald W. Griffin, Norman H. Zivin, New York City, for plaintiff-appellee.

Before AINSWORTH and HENDERSON, Circuit Judges, and HUNTER,* District Judge.

AINSWORTH, Circuit Judge:

Amstar Corporation brought this suit asserting trademark infringement and unfair competition against Domino's Pizza, Inc. (DPI) and several of its franchisees[1] to enjoin their use of Amstar's federal registration of the "Domino" trademark. The complaint is based on allegations that defendants' use of the mark "Domino's Pizza" in connection with the sale of fast-food delivered hot pizza pies constitutes trademark infringement and a false designation of origin or representation in violation of the Trademark Act of 1946, 15 U.S.C. § 1051 et seq.;[2] also that said use constitutes unfair competition in violation of the

Newton, Hopkins & Ormsby, Todd Deveau, William H. Needle, Atlanta, Ga., Beaman & Beaman, Jackson, Mich., George M. Hopkins, Atlanta, Ga., Miles J. Alexander, Jerre B. Swann, Virginia S. Taylor, Atlanta, Ga., for defendants-appellants.

* District Judge of the Western District of Louisiana, sitting by designation.

1. Atlanta Pizza, Inc.; Pizza Enterprises, Inc.; Pizza Services, Inc.; and Hanna Creative Enterprises, Inc. As found by the district court, all the foregoing corporations with the exception of Hanna Creative Enterprises, Inc., are now defunct. Findings of Fact Nos. 6, 7.

2. Provisions of the Trademark Act pertinent to this litigation provide:

   Any person who shall, without the consent of the registrant—

   (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

   (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

   shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) of this section, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

   15 U.S.C. § 1114(1).

   Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as

Georgia Uniform Deceptive Trade Practices Act, Ga.Code Ann. § 106–701 *et seq.*, and dilutes the distinctive quality of plaintiff's mark "Domino" in violation of the Georgia anti-dilution statute, Ga.Code Ann. § 106–115.[3] Defendants denied that plaintiff was entitled to any equitable relief, asserted trademark misuse by plaintiff, and counterclaimed for cancellation of plaintiff's registration of the "Domino" mark for salt.[4] The district court ruled in favor of plaintiff, dismissed defendants' counterclaim, and permanently enjoined defendants' use of the names "Domino" or "Domino's Pizza."

Defendants then filed this appeal. We reverse because we find that the district court's decision was fundamentally erroneous since it was predicated on a holding that there was a likelihood of confusion between the use of "Domino's Pizza" by defendants in connection with pizza store services and the use of "Domino" by plaintiff in connection with the sale of sugar and individual packets of condiment items.

### I. Background of Dispute

Amstar Corporation holds several federal registrations for the widely known "Domi-

that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.
15 U.S.C. § 1125(a).

3. The Georgia Uniform Deceptive Trade Practices Act provides in part:

(a) A person engages in a deceptive trade. practice when, in the course of his business, vocation, or occupation, he:

(1) Passes off goods or services as those of another;

(2) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;

(4) Uses deceptive representations or designations of geographic origin in connection with goods or services;

(5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;

(6) Represents that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand;

(7) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(8) Disparages the goods, services, or business of another by false or misleading representation of fact;

(9) Advertises goods or services with intent not to sell them as advertised;

(10) Advertises goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

(11) Makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; or

(12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

(b) In order to prevail in an action under this Chapter, a complainant need not prove competition between the parties or actual confusion or misunderstanding.

(c) This section does not affect unfair trade practices otherwise actionable at common law or under other statutes of this State. (Acts 1968, pp. 337, 338.)
Ga.Code Ann. § 106–702.
The Georgia anti-dilution statute provides:

Every person, association, or union of working men adopting and using a trademark, trade name, label or form of advertisement may proceed by suit and all courts having jurisdiction thereof shall grant injunctions, to enjoin subsequent use by another of the same or any similar trade-mark, trade name, label or form of advertisement *if there* exists a likelihood of injury to business reputation or of dilution of the distinctive quality of the trade-mark, trade name, label, or form of advertisement of the prior user, notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services; except that the provisions of this section shall not deprive any party of any vested lawful rights acquired prior to the effective date of this section. (Acts 1955, pp. 453, 454.)
Ga.Code Ann. § 106–115.

4. Defendants' counterclaim for cancellation of the "Domino" mark for salt is based on its contention that the registration was obtained through false representations concerning the date of first use in commerce of "Domino" salt on June 4, 1964. Defendants contend they are damaged by this registration because it is the only "Domino" registration for non-sugar products which purports to show a first use date prior to that of the first use date of the mark "Domino's Pizza" by DPI on February 12, 1965.

no" trademark,[5] and the mark has been used since the turn of the century on plaintiff's various sugar products. Since 1965, plaintiff has also packaged single-serving (portion-control) envelopes of salt, pepper, sugar, mustard, ketchup, mayonnaise, jams and jellies, salad dressings, taco sauce, honey, cranberry sauce, tartar sauce and table syrup under the "Domino" mark. Plaintiff has spent more than $54 million since 1947 in advertising and promoting its "Domino" products, and as a result there is wide public recognition of the mark as a source of sugar products. Amstar's non-sugar, single-serving condiment packages introduced in 1965 have become the nation's largest line of portion-control items, with sales currently running at a rate of about $14 million per year.

Defendant DPI is the nation's largest chain of fast-food delivered pizza pie outlets, with 287 stores in 30 states and current sales exceeding $43 million annually. The chain has used the name "Domino's Pizza" since early in 1965. Prior to that date, the pizzeria from which the chain grew was known as "Dominick's," named after its founder, Dominick Devarti. Devarti sold his pizzeria located in Ypsilanti, Michigan to Thomas Monaghan in December of 1960. In 1963 Devarti withdrew his permission to use the name "Dominick's," and for an interim period Monaghan called the store "Ypsilanti Dominick's." During this period Monaghan searched for a suitable new name for his pizzeria. In 1965 an employee suggested the name "Domino's Pizza," and Monaghan adopted the name immediately. At trial, Monaghan stated that he selected the name because it sounded Italian, it resembled "Dominick's," and he was unaware of any other pizzerias using the name. The company initially prospered, and in 1967 the first "Domino's Pizza" franchise was sold. By the end of 1969, there were 42 "Domino's Pizza" stores in operation in three states.

The plaintiff first became aware of DPI on June 24, 1970 when defendants' "Domino's" and "Domino's plus design" marks were published in the Official Gazette of the Patent Office, pending registration of the marks by the U. S. Patent Office. Pursuant to 15 U.S.C. § 1063, plaintiff filed notices of opposition to registration of the marks. DPI at the time was in serious

5. Plaintiff is the owner of the following trademark registrations issued by the U.S. Patent and Trademark Office:

| Trademark | Reg. No. | Registration Date | Goods |
|---|---|---|---|
| DOMINO design | 37,082 | 9/17/01 (renewed 1931, 1951, 1971) | Hard sugar |
| DOMINO | 37,177 | 10/8/01 (renewed 1931, 1951, 1971) | Hard sugar |
| DOMINO | 73,099 | 3/16/09 (renewed 1929, 1949, 1969) | Hard sugar |
| DOMINO | 812,656 | 8/9/66 | Portion-control mustard |
| DOMINO | 812,657 | 8/9/66 | Portion-control ketchup |
| DOMINO | 813,101 | 8/16/66 | Salt |
| DOMINO | 813,113 | 8/16/66 | Portion-control pepper |
| DOMINO | 920,834 | 9/21/71 | Jams and jellies |
| DOMINO | 927,856 | 1/25/72 | Salad dressing, mayonnaise, cucumber relish |
| DOMINO | 1,108,831 | 12/12/78 | Non-dairy powdered cream substitute |

Findings of Fact Nos. 12, 50.

financial difficulty, and the oppositions were not answered. Registration of the marks was therefore refused by the Patent Office.

In early 1971 plaintiff's counsel wrote to DPI's predecessor, Domino's Inc., requesting that the "Domino's Pizza" mark be changed. Domino's Inc. did not respond to the letter, and plaintiff took no further action at that time. Plaintiff did, however, order credit reports on DPI for the next three years which were used in monitoring DPI's business.

In 1972 and 1974 DPI again sought to register the trademark "Domino's Pizza" with the U. S. Patent Office. The mark was passed for publication in the Official Gazette of the Patent Office on each occasion, signifying that an examiner of the office had concluded that the mark was entitled to registration, 15 U.S.C. § 1062(a). Plaintiff filed notices of opposition to each of the foregoing applications, and defendant withdrew each application. Plaintiff ultimately filed this suit against DPI in September 1975.

In a lengthy memorandum of Findings of Fact and Conclusions of Law, the district court held that the defendants were guilty of trademark infringement (15 U.S.C. § 1114(1)), false designation of origin (15 U.S.C. § 1125(a)), and dilution, unfair competition and deceptive trade practices under Georgia law. The court detailed at length the plaintiff's use of the "Domino" trademark in connection with sugar, and more recently with portion-control items. It found that "[c]onsumers are highly likely to associate any food products sold or available for sale in supermarkets, groceries or other food stores under the DOMINO mark with the DOMINO food products sold by plaintiff." Finding of Fact No. 31. It further concluded that "[a]s a result of plaintiff's widespread use, advertising and promotion of the DOMINO trademark on a great variety of food products, the consuming public is very likely to believe that DOMINO's Pizza, sold in a separate food store outside of the supermarket, is in some way or manner sponsored by or affiliated with, or con-

nected with, or emanates from plaintiff." Finding of Fact No. 61. The court found that the mark "Domino's Pizza" is "so similar to plaintiff's famous mark DOMINO in sound and appearance that the public cannot always perceive any differences between them." Finding of Fact No. 63. The court concluded that, as a matter of law, "[u]se of virtually identical marks for food products distributed to and in food stores to the consuming public is likely to result in confusion, mistake or deception." Conclusion of Law No. 10.

On appeal, defendants contend the district court erred in concluding that use of virtually identical marks for food products is likely to result in confusion or deception, and defendants also contend that the court erred "by misapplying or failing to apply the critical factors to be weighed in assessing likelihood of confusion." Brief for Appellants at 10. Plaintiff Amstar contends that the court's finding of likelihood of confusion or mistake is not clearly erroneous, and must therefore be sustained by this court. Plaintiff contends that this finding is substantiated by many factors, including the notoriety and strength of the "Domino" mark, the confusing similarity of the marks "Domino's Pizza" and "Domino," the related nature of defendants' goods and services to those of plaintiff, the fact that customers for both plaintiff's and defendants' goods are the general consuming public, the existence of some actual confusion, and the results of two surveys which tend to confirm the likelihood of confusion.

Based on the record before us, we are convinced that the trial court erred in enjoining defendants' use of the mark "Domino's Pizza." We therefore reverse the decision of the district court, and vacate the injunction entered against defendants.

## II.  Standard of Review

■ Initially, we must determine the appropriate standard of review applicable to the district court's finding of likelihood of confusion. The determination as to whether confusion is likely has been held to present a question of law, *Fleischman Distilling Corp. v. Maier Brewing Co.*, 314 F.2d

149, 152 (9th Cir. 1963), *cert. denied*, 374 U.S. 830, 83 S.Ct. 1870, 10 L.Ed.2d 1053 (1963); a mixed question of law and fact, *B. H. Bunn Co. v. AAA Replacement Parts Co.*, 451 F.2d 1254, 1261 (5th Cir. 1971), and a question of fact, *T.G.I. Fridays v. International Restaurant Group, Inc.*, 569 F.2d 895, 899 (5th Cir. 1978). This circuit has held that likelihood of confusion is a question of fact which can only be set aside if clearly erroneous. *T.G.I. Fridays, supra* ; Fed.R. Civ.P. 52(a). The record in the present case indicates that the district court's finding of likelihood of confusion is clearly erroneous.

■ The court's 54-page memorandum of Findings of Fact and Conclusions of Law was copied almost verbatim from proposed Findings of Fact and Conclusions of Law submitted by plaintiff's counsel. While the practice of allowing counsel for the prevailing party to write the trial judge's opinion has not been proscribed by this circuit, it should nevertheless be discouraged. Even though the court, in adopting plaintiff's findings and conclusions, stated that it had "individually considered" them and adopted them because it "believed them to be factually and legally correct," a cursory reading of the district court's memorandum leaves one with the impression that it was indeed written by the prevailing party to a bitter dispute. While the "clearly erroneous" rule of Fed.R.Civ.P. 52(a) applies to a trial judge's findings of fact whether he prepared them or they were developed by one of the parties and mechanically adopted by the judge, "we can take into account the District Court's lack of personal attention to factual findings in applying the clearly erroneous rule." *Wilson v. Thompson*, 593 F.2d 1375, 1384 n.16 (5th Cir. 1979). *See also James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 314 n.1 (5th Cir. 1977); *Volkswagen of America, Inc. v. Jahre*, 472 F.2d 557, 559 (5th Cir. 1973). As was stated in *James* :

"[T]he appellate court can feel slightly more confident in concluding that important evidence has been overlooked or inadequately considered" when factual findings were not the product of personal

analysis and determination by the trial judge. 559 F.2d at 314 n.1, *quoting Louis Dreyfus & Cie. v. Panama Canal Co.*, 298 F.2d 733, 738 (5th Cir. 1962).

■ A finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). "In other words, we reverse when the result in a particular case does not reflect the truth and the right of the case." *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 501 (5th Cir. 1979). Such is the case here. Having reviewed all the evidence in this case in light of established legal precedent, we are left with the definite and firm conviction that the district court was mistaken in concluding that defendants' use of the mark "Domino's Pizza" is likely to cause confusion, mistake or deception.

### III. Likelihood of Confusion

■ Infringement of a registered mark is governed by the provisions of 15 U.S.C. § 1114(1), which imposes liability against "use . . . likely to cause confusion, or to cause mistake, or to deceive." The same test is applicable to the deceptive trade practices claim, Ga.Stat.Ann. § 106–701 *et seq.; Baker Realty Co. v. Baker*, 228 Ga. 766, 187 S.E.2d 850, 852 (1972), and common law unfair competition, *Holiday Inns, Inc. v. Holiday Out in America*, 481 F.2d 445, 449 (5th Cir. 1973); *B. H. Bunn Co. v. AAA Replacement Parts Co.*, 451 F.2d 1254, 1262 (5th Cir. 1971). Likewise, defendants' use of the mark "Domino's Pizza" can represent a false designation of origin or false description, proscribed by 15 U.S.C. § 1125, only if defendants' use of the mark is likely to be confused with plaintiff's "Domino" mark. *Boston Professional Hockey Ass'n, Inc. v. Dallas Cap and Emblem Mfg., Inc.*, 510 F.2d 1004, 1013 (5th Cir.), *cert. denied*, 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975). Plaintiff's claims against defendants, except the dilution claim, therefore,

turn on the determination of whether defendants' use of the mark "Domino's Pizza" is likely to cause confusion, mistake, or deception.

In this circuit likelihood of confusion is determined by evaluating a variety of factors including the type of trademark at issue; similarity of design; similarity of product; identity of retail outlets and purchasers; identity of advertising media utilized; defendant's intent; and actual confusion.

*Roto-Rooter Corporation v. O'Neal*, 513 F.2d 44, 45 (5th Cir. 1975), *citing Continental Motors Corp. v. Continental Aviation Corp.*, 375 F.2d 857 (5th Cir. 1967); *American Foods, Inc. v. Golden Flake, Inc.*, 312 F.2d 619 (5th Cir. 1963); *Sears, Roebuck & Co. v. All States Life Insurance Co.*, 246 F.2d 161 (5th Cir.), *cert. denied*, 355 U.S. 894, 78 S.Ct. 268, 2 L.Ed.2d 192 (1957). *See also* Restatement of Torts § 729 (1938).[6]

An evaluation of these factors leads us to conclude that defendants' use of the trademark "Domino's Pizza" presents no likelihood of confusion, mistake, or deception.

### 1. Type of trademark

■ We consider, first, whether "Domino" is a "strong" or a "weak" mark since the strength and distinctiveness of plaintiff's mark is a vital consideration in determining the scope of protection it should be accorded. "Strong marks are widely protected, as contrasted to weak marks." Lunsford, Julius R., Jr., "Trademark Basics," 59 Trademark Rep. 873, 878 (1969).

■ At trial, defendants introduced into evidence or tendered into court some 72 third-party registrations of the mark "Domino" in the U. S. Patent Office. Brief for Appellant at 18–24. These registrations

were for such products as canned fruits, citrus, cigarettes, cheese, wheat flours, chrome-tanned leather, canned sardines, animal feed, envelopes, pencils, fishing line, candy mints, whiskey, ladies' hosiery and haircream. In addition, defendants presented extensive evidence of 15 third-party uses of the "Domino" mark from 1885 until the present. These uses included "Domino" cigarettes and matches, which are currently sold in grocery stores, two restaurants currently operating under the "Domino's" mark, a small chain of supermarkets in the Bronx, New York, with sales of $3,900,000 in 1976, and a "Domino Donut Mix" distributed by General Mills to commercial bakers since 1959. The district court dismissed these and other third-party uses as either long abandoned; remote as to goods or geography; small, obscure and localized; or used only in shipments to the trade. We do not believe that such extensive third-party use and registration of "Domino" can be so readily dismissed. The impact of such evidence is not dispelled merely because "Domino" cigarettes and matches are not leading brands, or because some uses of the mark "Domino" by third parties have not been related to food products. As was stated by one commentator, "If the owner of KODAK should permit its use by others on washing powders, shoes, candy bars, or cosmetics, or if The Coca-Cola Company should permit COCA–COLA or COKE to be used for rain coats, cigarette lighters, golf balls, or jewelry not of its manufacture, it would not take long for even these giants in the trademark world to be reduced to pigmy size." Lunsford, *supra* at 878–79. As stated in comment g to the Restatement of Torts § 729 (1938), "The greater the number of identical or more or less similar trade-marks already in use on

---

**6.** The Restatement of Torts lists the following as important factors in determining confusing similarity:

(a) the degree of similarity between the designation and the trade-mark or trade name in

(i) appearance;

(ii) pronunciation of the words used;

(iii) verbal translation of the pictures or designs involved;

(iv) suggestion;

(b) the intent of the actor in adopting the designation;

(c) the relation in use and manner of marketing between the goods or services marketed by the actor and those marketed by the other;

(d) the degree of care likely to be exercised by purchasers.

Restatement of Torts § 729 (1938).

different kinds of goods, the less is the likelihood of confusion . . . ." The extensive third-party uses documented in this case were entitled to much greater weight than were accorded them by the district court. *See Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 505 (5th Cir. 1979) (multiple uses of mark "World" discussed in denying injunctive relief); *American Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 13 (5th Cir. 1974) (multiple uses of "Heritage" discussed in denying injunctive relief); *Holiday Inns, Inc. v. Holiday Out in America*, 481 F.2d 445, 448 (5th Cir. 1973) (multiple uses of "Holiday" discussed in denying injunctive relief).

Defendants do not contend, nor does this court hold, that plaintiff's mark is not a distinctive, well-known mark for its sugar and related products. The third-party uses and registrations discussed above merely limit the protection to be accorded plaintiff's mark outside the uses to which plaintiff has already put its mark. *American Sugar Co. v. Texas Farm Products Co.*, 159 U.S.P.Q. 679, 681 (T.T.A.B.1968); [7] *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 598 F.2d 1225 (3rd Cir. 1978) (plaintiff's ownership of the mark "Scott" as applied to paper products does not preclude defendant's use of "Scott" on furniture polish).

Additional support for the conclusion that the mark "Domino" should be accorded only limited protection outside of

plaintiff's sugars and related food products can be derived from the nature of the mark itself. "Domino," in spite of the district court's finding that it is "not primarily a surname," Finding of Fact No. 98, is indeed the surname of a good number of people, as a glance at a local telephone directory can verify. The word is a common English name for a game, a hooded costume, a type of mask, and a theory of political expansion. Thus, "Domino" is not a coined word, is not purely fanciful, and while its application to sugar may be arbitrary,[8] it is still not to be accorded the same degree of protection given such coined and fanciful terms as "Kodak" or "Xerox." *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 505 (5th Cir. 1979) (wide use of mark "World" results in little likelihood of confusion); *Holiday Inns, Inc. v. Holiday Out in America*, 481 F.2d 445, 448 (5th Cir. 1973) (common word "Holiday" is of weak trademark significance); *El Chico, Inc. v. El Chico Cafe*, 214 F.2d 721, 725 (5th Cir. 1954) (27 trademark registrations of "El Chico," along with fact it was the name of a Moorish king of Granada in 1482, and is the name of a Mexican town and a river in the Philippines, make the term a weak trade name deserving limited protection).

### 2. Similarity of design

"Similarity of appearance is determined on the basis of the total effect of the desig-

7. In *American Sugar Co. v. Texas Farm Products Co.*, 159 U.S.P.Q. 679, 681 (T.T.A.B.1968), American Sugar (predecessor in interest to Amstar) opposed registration by Texas Farm Products of the mark "Domino" for use on its cattle feed. The evidence established that American Sugar sold various sugar syrups and byproducts (principally blackstrap molasses) under the "Domino" mark, which were used in conjunction with or alone as cattle feed. The Trademark Trial and Appeal Board refused registration by Texas Farm Products, holding that both American Sugar's "Domino" products and Texas Farm Products' feed went through the same channels of trade to the same consumers. Texas Farm Products had contended that third-party uses of "Domino" limited American Sugar's rights in the mark. The Appeal Board's response to that argument is instructive here:

> Applicant also contends that "DOMINO" is a weak mark as evidenced by the third party registrations and uses thereof hereinbefore

referred to. This contention would be relevant, however, only if opposer were seeking protection of the mark in a field other than that in which it had previously been used, and such is not here the case.

159 U.S.P.Q. at 681. Thus, the Appeal Board, while denying registration to Texas Farm Products, acknowledged that extensive third-party use of the mark "Domino" might mandate a different result if Amstar sought protection of the mark in a field "other than that in which it had previously been used." As Amstar has never used the "Domino" mark in connection with the sale of fast-food delivered pizzas, this is such a case.

8. At one time, "Domino" as applied to plaintiff's sugar was descriptive, not arbitrary. There is evidence that, near the turn of the century, plaintiff sold domino-shaped pieces of hard sugar in half bales. Tr. 213–14.

nation, rather than on a comparison of individual features." Restatement of Torts § 729, comment b (1938). Considering the total effect of the respective marks, there is little similarity between plaintiff's and defendants' marks. As shown below, and as found by the district court, plaintiff's mark "almost always is presented on a bias with respect to the horizontal." Finding of Fact No. 14.

Defendants' mark, far from suggesting plaintiff's mark, is stylistically and typographically distinguishable.

We must also consider the commercial impression created by the mark as a whole. *Seabrook Foods, Inc. v. Bar-Well Foods, Ltd.*, 568 F.2d 1342, 1346 (Cust. & Pat.App. 1977); *Colgate-Palmolive Co. v. Carter-Wallace, Inc.*, 432 F.2d 1400, 1402, 56 CCPA 973 (1970). "It is the overall impression that counts." *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 502 (5th Cir. 1979). "Domino," in possessive form, next to the word "pizza," produces a commercial impression quite different from the same mark placed next to "sugar." "Domino" is derived from Latin, is an Italian surname, and in combination with "pizza" creates an Italian connotation. "The setting in which a designation is used affects its appearance and colors the impression conveyed by it." Restatement of Torts § 729, comment b (1938). The impression conveyed by defendants' use of "Domino's Pizza" is substantially different from that created by plaintiff's use of "Domino Sugar."

Additionally, the U. S. Patent Office has made, on three separate occasions, an initial determination that DPI is entitled to register the mark "Domino's Pizza." DPI applied to register "Domino's" or "Domino's Pizza" plus corresponding designs three different times. Each time, a trademark examiner in the office determined that DPI was entitled to have the mark registered. *See* 15 U.S.C. § 1062(a). The trademark examiner on one of these occasions wrote that "[a] search of the Office records fails to show that the mark, when applied to applicant's services, is confusingly similar to any registered mark." Record on Appeal at 2815. At the time this search was made, plaintiff had registered "Domino" for sugar, mustard, ketchup, salt and pepper. *Id.*

### 3. Similarity of products

The district court stated in some detail its view of the similarities between defendants' pizza and plaintiff's sugar, salt, mustard, ketchup and other condiments. The court at one point went so far as to state the "consuming public considers sugar to be a related food product to pizza." Finding of Fact No. 84. However, we fail to see any great similarity between the respective parties' wares. "About the only things they have in common are that they are edible." *California Fruit Growers Exchange v. Sunkist Baking Co.*, 166 F.2d 971, 973 (7th Cir. 1947).

#### 4. Identity of retail outlets and purchasers

Dissimilarities between the retail outlets for and the predominant consumers of plaintiff's and defendants' goods lessen the possibility of confusion, mistake, or deception. The dissimilarities here are substantial.

Plaintiff's "Domino" sugar products are distributed to the public primarily through grocery stores; defendants' pizzas and soft drinks are distributed exclusively through fast-food outlets specializing in home delivery or customer pickup, but offering no facilities for sit-down service. Plaintiff attempts to narrow the gap between itself and defendants by arguing that its single-serving sugar packets, and more recently its line of single-serving condiments, are widely used in fast-food outlets and restaurants. Thus, it argues, the public has come to associate the mark "Domino" with restaurants and fast-food establishments. While the argument carries some weight, it is insufficient to overcome basic differences between plaintiff's and defendants' modes of distributing their products.

Although "Domino" sugar and individual condiment packages are distributed to the public through restaurants and fast-food chains, they are not sold to the public by plaintiff but are generally distributed to customers by the restaurant owners. Amstar is not engaged in the direct sale of condiment packages to the public. In contrast, "Domino's Pizza" products are sold directly to the public through "Domino's Pizza" outlets. While the public may decide to purchase a pizza based on its perception of "Domino's Pizza" quality, it is unlikely anyone would choose to frequent or avoid a restaurant because of the brand of condiment packages carried by the restaurant. Thus, while Amstar might broadly be classified as "in the restaurant business," it is in that business at a different level than defendants.

There are substantial dissimilarities between the predominant purchasers of plaintiff's and defendants' products. According to surveys presented at trial, "Domino's Piz-za" patrons are primarily young (85.6% under 35 years of age), single (61%) males (63.3%). This coincides with the fact that 75% of the "Domino's Pizza" stores throughout the country are situated in college campus towns or around military bases where the advertising for "Domino's Pizza" is directed to the 18- to 34-year-old single male. In contrast, "Domino" sugar purchasers are predominantly middle-aged housewives.

#### 5. Identity of advertising media utilized

The district court made extensive findings of fact regarding plaintiff's advertising of its "Domino" mark. The court found Amstar advertised extensively in nationally circulated magazines, newspapers and trade journals, and spent substantial sums of money on radio and television commercials. It stated "DOMINO is the only sugar on network television every week." Finding of Fact No. 23. In contrast to plaintiff's broadly based national advertising, defendants' advertising has a completely different focus. Because over 80% of defendants' pizza sales involve free delivery, defendants' advertising is of two principal types: (i) store signs, flyers, delivery car signs and other like materials designed for maximum impact in the 1.5-mile delivery area of a "Domino's Pizza" outlet, and (ii) "Yellow Page" ads. Unlike the national audience sought by Amstar, defendants' advertising is targeted at young, male college students.

The substantial dissimilarities between plaintiff's and defendants' advertising campaigns tend to negate any inference of unfair competition or trademark infringement. Defendants' advertising program is geared to seek out and exploit a highly localized and rather specialized class of consumers. Defendants have not sought to mine the good will established by plaintiff. In short, hardly anyone would confuse a "Domino" sugar ad with a "Domino's Pizza" sales pitch, nor would they likely believe the two advertisements emanated from the same source, considering the significant differences between the advertisements in message content and presentation.

### 6. Defendants' intent

█ The intent of defendants in adopting the "Domino's Pizza" mark is a critical factor, since if the mark was adopted with the intent of deriving benefit from the reputation of "Domino" that fact alone "may be sufficient to justify the inference that there is confusing similarity." Restatement of Torts § 729, comment f (1938). Bad faith in the adoption and use of a trademark normally involves the imitation of packaging material, use of identical code numbers, adopting of similar distribution methods or other efforts by a party to "pass off" its product as that of another. *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 382–83 (5th Cir. 1977). There is no evidence that defendants have ever attempted to "pass off" their goods as those of plaintiff. Evidence introduced at trial established that the name "Domino's Pizza" was adopted because Mr. Monaghan had been told he could no longer use the name "Dominick's," the new name sounded Italian, and it was quite close to the old name. Although Monaghan was aware of "Domino" sugar at the time, he was unaware of any other pizzerias by that name. There is no evidence the name was adopted with any intent to confuse, mislead, or deceive the public.[9]

### 7. Actual confusion

█ Although evidence of actual confusion is not necessary to a finding of likelihood of confusion, it is nevertheless the best evidence of likelihood of confusion. *Roto-Rooter Corp. v. O'Neal*, 513 F.2d 44, 46 (5th Cir. 1975). The evidence of actual confusion in this case is minimal. Plaintiff's evidence of actual confusion amounted to two verbal inquiries as to whether "Domino's Pizza" was related to "Domino" sugar, and one misaddressed letter.[10] In view of the fact that both plaintiff's and defendants' sales currently run into the millions of dollars each year, these isolated instances of actual confusion are insufficient to sustain a finding of likelihood of confusion. *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 506 (5th Cir. 1979); *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1231 (3rd Cir. 1978). Indeed, the fact that only three instances of actual confusion were found after nearly 15 years of extensive concurrent sales under the parties' respective marks raises a presumption against likelihood of confusion in the future. *FS Services, Inc. v. Custom Farm Services, Inc.*, 325 F.Supp. 153, 162 (N.D.Ill. 1970), *aff'd*, 471 F.2d 671 (7th Cir. 1972).

At trial, both parties introduced survey evidence on the issue of likelihood of confusion. The trial court characterized the defendants' survey as "about as contrived a survey as I have ever run across,"[11] but found plaintiff's survey "properly conducted and fair." Finding of Fact No. 90. Our own examination of the survey evidence convinces us that both surveys are substantially defective.

Plaintiff's survey was made by Dr. Russ Haley, Professor of Marketing at the University of New Hampshire. It was conducted in ten cities among female heads of households primarily responsible for making food purchases. Each participant was shown, in her own home, a "Domino's Pizza" box and was asked if she believed the company that made the pizza made any other product. If she answered yes, she was asked, "What products other than pizza do you think are made by the company that makes Domino's Pizza?" Finding of Fact No. 90(d). Seventy-one percent of those asked the second question answered "sugar."

---

**9.** Counsel for plaintiff conceded at trial that defendants did not adopt "Domino's Pizza" with an intent to deceive, although the mark was adopted with knowledge of plaintiff's use of "Domino." Tr. 1547.

**10.** The two verbal inquiries were made to employees of DPI who were asked if DPI was related to Amstar. The misaddressed letter was received by a DPI employee from a doctor who had treated him. The doctor's bill was addressed to "Domino Sugar." Record on Appeal at 2819.

**11.** The judge's comment was made during a hearing held November 2, 1979 on a motion by defendants to stay the district court's injunction pending this appeal. Hearing Tr. 63.

■ While the possible confusion level shown by the Haley study is high, there are several defects in the survey which significantly reduce its probative value. First, one of the most important factors in assessing the validity of an opinion poll is the adequacy of the "survey universe," that is, the persons interviewed must adequately represent the opinions which are relevant to the litigation. *American Basketball Ass'n v. AMF Voit, Inc.*, 358 F.Supp. 981, 986 (S.D.N.Y.), *aff'd*, 487 F.2d 1393 (2d Cir. 1973), *cert. denied*, 416 U.S. 986, 94 S.Ct. 2389, 40 L.Ed.2d 763 (1974); *Hawley Products Co. v. United States Trunk Co.*, 259 F.2d 69, 77 (1st Cir. 1958). The appropriate universe should include a fair sampling of those purchasers most likely to partake of the alleged infringer's goods or services. *American Basketball, supra* ; *Hawley Products, supra.* Of the ten cities in which the Haley survey was conducted, eight had no "Domino's Pizza" outlets, and the outlets in the remaining two had been open for less than three months. Additionally, the persons interviewed consisted entirely of women found at home during six daylight hours who identified themselves as the member of the household primarily responsible for grocery buying. As plaintiff's sugar is sold primarily in grocery stores, participants in the Haley survey would have been repeatedly exposed to plaintiff's mark, but would have had little, if any, exposure to defendants' mark. Furthermore, the survey neglected completely defendants' primary customers—young, single, male college students. Thus, we do not believe that the proper universe was examined, and the results of the survey must therefore be discounted. *Handbook of Recommended Procedures for the Trial of Protracted Cases*, 25 F.R.D. 351, 429 (1960).

■ Of additional concern, plaintiff's survey was a "word association" test. Participants in the survey were confronted with the "Domino's Pizza" mark, and more or less asked if it brought anything else to mind. We have previously held that such a procedure degenerates "into a mere word-association test entitled to little weight." *Holiday Inns, Inc. v. Holiday Out in America*, 481 F.2d 445, 448 (5th Cir. 1973). We do not believe the Haley survey presents any meaningful evidence of likelihood of confusion.[12]

The trial court discounted defendants' survey for largely the same reasons just discussed—it was conducted on the premises of "Domino's Pizza" outlets and therefore did not examine a proper survey universe, and the questioning procedures used were improper. Thus, defendants' survey is likewise not probative of the presence or absence of confusion.[13]

■ Accordingly, we conclude that the trial court was clearly in error when it held defendants' use of the trademark "Domino's Pizza" was likely to cause confusion, mistake, or deception. In the absence of any solid evidence of actual confusion, the limited strength of the "Domino" mark outside plaintiff's line of sugars and portion-control condiments compels the opposite conclusion, especially in light of the marked dissimilarities between plaintiff and defendants in trademark design, products, retail outlets,

12. Other courts have rejected surveys performed by Dr. Haley as slanted or biased. *American Footwear Corp. v. General Footwear Company, Ltd.*, 609 F.2d 655, 660–61 n.4 (2d Cir. 1979); *Charles Revson, Inc. v. Max Factor & Co.*, 76 Civ. 5215, Findings of Fact Nos. 101–08 (S.D.N.Y.1977); *Phillip Morris, Inc. v. R. J. Reynolds Tobacco Co.*, 188 U.S.P.Q. 289, 293–94 (S.D.N.Y.1975).

13. The actual results of defendants' survey are disputed. Plaintiff argues the survey shows a 6.8% confusion level, and the court in copying plaintiff's proposed Findings of Fact adopted that argument. Defendants argue the survey showed an actual confusion level of only 0.4%. They contend the 6.8% figure can be derived only by eliminating all respondents to the survey who were either not familiar with "Domino" sugar or who responded "don't know" when asked if the same entity made both "Domino" sugar and "Domino's Pizza." They argue that such a procedure is as unwarranted as excluding the percentage of "undecided" voters in a political poll. While we note the conflict between plaintiff and defendants on this issue, our holding discounting the survey evidence in this case makes it unnecessary for us to resolve it.

purchasers and advertising. We also note that plaintiff has not been vigilant in protecting its rights in the "Domino" mark. Since it first began using the mark, it has failed to object to 72 third-party registrations of "Domino." When infringing third-party uses of the mark have become known, as in General Mills' use of "Domino" on a widely distributed doughnut mix, plaintiff has written letters requesting discontinuance of the mark, but has never brought suit against any such infringement until now. As noted by the district judge in the course of the trial, plaintiff "has not maintained, has not policed its mark." Tr. 1664. Plaintiff brought this suit after nearly ten years of simultaneous use of the mark "Domino" by Amstar and DPI. A trademark owner that strongly believed its customers were being deceived would hardly have remained idle for such an extended period of time.

Our conclusion that there is no likelihood of confusion in this case is fatal to most of plaintiff's claims. With no likelihood of confusion, there can be no trademark infringement, 15 U.S.C. § 1114(1). Since there is no likelihood of confusing defendants' goods with those of plaintiff's, the false designation of origin claim also falls. 15 U.S.C. § 1125; *Boston Professional Hockey Ass'n, Inc. v. Dallas Cap and Emblem Mfg. Co., Inc.*, 510 F.2d 1004 (5th Cir.), cert. denied, 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975). Common law unfair competition turns primarily on likelihood of customer confusion, and therefore defendants must prevail herein on that issue. *Holiday Inns, Inc. v. Holiday Out in America*, 481 F.2d 445 (5th Cir. 1973); *B. H. Bunn Co. v. AAA Replacement Parts Co.*, 451 F.2d 1254 (5th Cir. 1971). Finally, the crux of a complaint based on the Georgia Uniform Deceptive Trade Practices Act is the likelihood of confusion between goods. *Baker Realty Co. v. Baker*, 228 Ga. 766, 187 S.E.2d 850 (1972). This claim also is without merit.

### IV. Dilution

Georgia's anti-dilution statute protects against "dilution of the distinctive

quality of the trade-mark . . . notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services . . . ." Ga. Code Ann. § 106–115. Dilution, as we have previously noted, occurs "where the use of the trademark by the subsequent user will lessen the uniqueness of the prior user's mark with the possible future result that a strong mark may become a weak mark." *Holiday Inns, Inc. v. Holiday Out in America*, 481 F.2d 445, 450 (5th Cir. 1973). The concept is not applicable in this situation, however, because "it has been determined that the marks themselves are not confusing," *id.*, and as discussed at length previously, "Domino," outside plaintiff's line of sugars and portion-control items, has already become a weak mark. Plaintiff's claim against defendants under the Georgia statute is therefore invalid.

### V. Conclusion

In reversing the district court and vacating the injunction entered against defendants, we do not intimate that the mark "Domino," as applied to plaintiff's sugars and portion-control items, is not a widely known mark deserving substantial protection. However, "[t]he right granted to the owner of a registered trademark is a monopoly and should not be extended unless the owner is clearly entitled thereto." *S. C. Johnson & Son, Inc. v. Johnson*, 266 F.2d 129, 136 (6th Cir.), cert. denied, 361 U.S. 820, 80 S.Ct. 65, 4 L.Ed.2d 65 (1959). Since defendants' use of the mark "Domino's Pizza" is not likely to confuse, mislead, or deceive the public, the district court's order and injunction to the contrary are set aside, and the judgment is

REVERSED.