# UNITED STATES COURT OF APPEALS
## For the Fifth Circuit
_____

## No.  99-20967
_____

### PULSE EFT ASSOCIATION,


Plaintiff-Appellant,

### VERSUS


### SEARS ROEBUCK AND COMPANY,


Defendant/Appellee.


_____

Appeal from the United States District Court
For the Southern District of Texas, Houston
_____

January 2, 2001

Before: GOODWIN[1], GARWOOD and JONES, Circuit Judges.

PER CURIAM:[2]

Pulse EFT (Pulse) sued Sears Roebuck and Co. (Sears) in the United States

District Court for the Southern District of Texas alleging that Sears' PULSE

_____

[1]Circuit Judge of the Ninth Circuit, sitting by designation.

[2]Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

discount card constituted trademark infringement and unfair competition in violation of 15 U.S.C. §§ 1114(1) and 1125(a), and trademark dilution in violation of 15 U.S.C. § 1125(c) and Section 16.29 of the Texas Business and Commerce Code. Following a bench trial, the district court granted judgment for Sears. The appeal is timely, and we affirm.

Pulse EFT is a non-profit membership corporation made up of more than 2,000 financial institutions. These banks, large and small, and credit unions are concentrated in a nine state area centered around Texas and Louisiana. Pulse EFT provides its electronic network services to ATMs and "Point of sale" (POS) terminals located in retail stores. Essentially, the Pulse EFT network serves the routing of electronic funds transfers and other transactions.

Financial institutions which become members of Pulse EFT, may issue credit and debit cards (ATM cards) in their own name, which can be used anywhere in the Pulse EFT network. Some of these institutions issue Pulse EFT capable cards that are also identified as Visa or MasterCard. These affiliated Pulse EFT credit cards can be used at retail stores, including those of Sears. Ordinary Pulse EFT debit cards cannot be used at Sears stores.

Cards that allow access to the Pulse EFT network have a Pulse logo imprinted on them, and (generally) identify the logos of ATM and POS terminals

that accept Pulse EFT cards. The Pulse EFT logo consists of the word "Pulse" with a line underneath. The Pulse EFT cards superficially resemble other wallet sized cards, including the Sears Pulse card. The Sears Pulse card is not a credit card, but only identifies the cardholder as a participant in Sears frequent customer promotional activities and makes certain purchases eligible for discounts and frequent purchaser points that can be used toward additional Sears purchases.

Pulse EFT and its predecessor in interest have used the Pulse mark in connection with electronic banking services for almost twenty years, but until recently, Pulse EFT has not offered a card to any segment of the general public for use in retail or ATM transactions. Pulse EFT owns several federally registered marks that are variations on its Pulse mark. Pulse EFT's Pulse mark is registered in Class 36 (insurance and financial) for "data processing services in the field of electronic funds transfer messages between financial institutions." Pulse EFT's mark has become incontestable under the Lanham Act, and Sears does not claim that Pulse EFT's mark does not warrant trademark protection to the extent of its registration.

Sears operates a national chain of retail stores that offer a wide range of goods and services. Sears stores are divided into departments, and the department involved in this litigation is the "junior apparel" department which sells young

women's clothes and is named "Mainframe." The target market of this department is young women aged 12-24. When Sears launched this new marketing campaign, Sears created its "Pulse" membership program. The record does not reveal how or why the word "Pulse" was chosen for this program. The word is common in botanical, telecommunication, medical, and other usages as a noun, and is also used as an intransitive verb. It requires context to have any particular meaning.

Sears "Pulse" membership card, looks superficially like a credit or ATM card, but it provides the customer to whom it is issued only with discounts on Sears' Mainframe brand apparel. It is not a credit or debit card. The card, when used by a customer, gives Sears valuable marketing data on the spending habits of a market segment. The Sears Pulse logo is the word "Pulse" written in white dot matrix letters in a red circle. Photos of the Sears card were received in evidence and were examined by the trial court. The Sears Pulse card can be obtained and used only at Sears, and has no banking or financial network capabilities. It is a discount customer identification card, and nothing more.

On July 16, 1998, Sears filed an intent to use application with the Patent and Trademark Office (PTO) to register the Pulse mark in International Class 35 for "retail department store services featuring a retail store customer loyalty/

membership card awards program for frequent users."  The PTO approved the Sears mark for publication after finding nothing in the PTO records that was confusingly similar.  Pulse EFT's Pulse mark previously had been registered, but in Class 36.  Sears published its Class 15 Pulse mark on April 20, 1999.

After test marketing, Sears launched its Pulse promotion nationally in July, 1999.  As part of this promotion Sears advertised in numerous "teen" magazines and on several web sites.  Sears also created in-store signs for its promotion, most of which prominently featured Sears' Pulse logo.  Sears' promotion, at the time of trial, had distributed approximately 1,000,000 of its Pulse membership cards.

Almost immediately, in early July of 1999, a Pulse EFT employee saw a Sears advertisement for its Pulse membership card in a magazine.  This suit was filed the same month.  The bench trial took up the issues of trademark infringement and trademark dilution under Federal and Texas law.  Both infringement issues involve a decision on whether a likelihood of confusion exists between the two similar marks.  The court found no significant likelihood of confusion because of the discrete context of the two usages, and because the word Pulse, by itself, had acquired no secondary meaning or "fame" as a proprietary mark.

*Likelihood of Confusion*

The likelihood of confusion between two marks depends on seven non-

exclusive factors.  They are: (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services involved, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any evidence of actual confusion.  *See Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 663 (5th Cir. 2000).  No one factor is dispositive,  a finding of a likelihood of confusion does not require a positive finding on a majority of the factors, and other relevant factors can be considered.  *See id.*

The district court orally delivered a statement of the rationale behind its ruling.  The transcript of this oral opinion does not indicate what legal standards the court was using, but generally shows that the court evaluated the evidence in light of the seven likelihood of confusion factors.  Moreover, neither party claims that the district court failed to apply the correct factors.

Pulse EFT challenges the district court's likelihood of confusion ruling on three grounds.  First, Pulse EFT claims that the district court did not give proper weight to the evidence of actual confusion Pulse EFT presented.  Second, Pulse EFT claims that the court erred when it concluded that Pulse EFT has no rights against a merchant like Sears because Pulse EFT's registration covers only transactions between financial institutions; and Pulse EFT could not enlarge its registration

coverage by means of after-the-fact expansion into markets not covered in the original registration. Pulse EFT argues that whatever the restrictions on its registered mark, it had still acquired common law rights in the "Pulse" mark in the electronic banking services market. Finally, Pulse EFT claims that the district court improperly required direct competition for trademark infringement.

While Pulse EFT did, in fact, produce some evidence of actual confusion, the trial court found the evidence far from compelling. Pulse EFT had the burden of proof. In the context of the relevant market, the court found no infringement. Pulse EFT's claim that the court failed to distinguish between consumer confusion as to function and confusion as to affiliation will be taken up in connection with the dilution claim.

The nature of the district court's opinion in this case makes it difficult to determine whether the court made the somewhat subtle but important distinction between infringement and dilution. In any event, the court correctly found that in any relevant context, there was virtually no likelihood of confusion.

Pulse EFT correctly points out that registration does not cabin the protection to which a trademark is entitled. Registration provides a source of mark protection, but, unlike patents, the language of the registration does not precisely define the legal protection a mark draws from the registration. We turn to the seven factors

used to examine likelihood of confusion.

### 1. Type of Mark

Sears does not dispute that Pulse EFT's mark is suggestive or arbitrary when applied to electronic banking. This factor weighs in favor of finding a likelihood of confusion of source in a limited context..

### 2. Similarity of Marks

Sears also does not dispute that the word in both marks is identical. However, the visual presentation of the marks is significantly different–Pulse EFT's mark is solid lettering with a line underneath, and Sears' logo is white dot matrix lettering on a bright red circle background. Pictures of these marks were before the court, and were self explanatory. The overall impression of the mark is a more important consideration than the textual identity of words contained in the marks. *See Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 261 (5th Cir. 1980). Even though both marks are used on a plastic wallet sized card, given the dramatically different presentations of each mark, this factor weighs against likelihood of confusion.

### 3. Similarity of Products or Services

Pulse EFT claims that the services offered by Pulse EFT and Sears offer through their respective cards are "extremely similar." This claim can be charitably

characterized as an exaggeration. The only similarity between the two services is that they are both heralded by plastic cards. Although the method of presentation is relevant to the similarity of the marks themselves, it cannot reasonably be claimed that the services offered by each company through their respective cards are in any way related. Pulse EFT offers electronic banking services, Sears offers discounts on junior apparel in its retail stores. These markets are entirely distinct, mutually noncompetitive, and share only a dictionary as a word finder. This factor weighs against any likelihood of confusion.

### 4. Identity of Retail Outlets/Purchasers

This factor is somewhat difficult to apply beyond a standard retail model. Pulse EFT's cards are obtained only through financial institutions, and Sears' cards can be obtained only at Sears' retail outlets. Both can be used at Sears' checkout counters, but exclusively for different purposes. The Sears card can be used only in Sears stores, and only for discounts on certain purchases. Anyone with a regional bank account is a potential holder of a credit card bearing the Pulse EFT mark, along with other affiliation marks, while Sears' program is directed only at young fashion shppers at Sears. This factor tends to favor Sears.

### 5. Identity of Advertising Media

The briefs and record are far from explicit on the exact nature of Pulse EFT's

advertising.  Pulse EFT is recorded as doing little direct advertising, with promotion for its cards through its member institutions, which tend to advertise their own brand (e.g., Wells Fargo) and not Pulse EFT's.  Sears advertised its Pulse program in a variety of "teen" oriented magazines prominently displaying the Sears name.  There is no evidence that Pulse EFT has ever attempted to target any retail market segment.  Due to a lack of evidence, this factor cannot be said to favor either side.

6. Intent

Nothing in the record suggests that Sears intended to trade on Pulse EFT's goodwill; or that Pulse EFT had any substantial fame outside the financial network in which it was registered.  There is also no indication that Sears intended that consumers infer any affiliation between Sears' discount program and Pulse EFT financial communication network.

7. Actual Confusion

The only evidence of actual confusion was that after Sears mailed out a million cards, some 49 incidents were reported of  Sears card holders trying without success to use them in ATM machines.   The district court did not consider these failures to follow card instructions to be proof of sufficient confusion to support a finding of infringement.

There was no error in the conclusion that Sears had not infringed Pulse EFT's

trademark.

### *The Dilution Claim*

Federal law provides additional protections for owners of marks that are distinctive and "famous." *See* 15 U.S.C. § 1125(c). A non-exhaustive statutory list of factors for the court to consider when determining whether or not a mark is famous is contained in 15 U.S.C. § 1125(c)(1). The listed factors are: (A) the degree of inherent or acquired distinctiveness of the mark, (B) the duration and extent of use of the mark in connection with the particular goods and services in question, (C) the duration and extent of advertising and publicity of the mark, (D) the geographic extent of the area in which the mark is used, (E) the channels of trade for the goods or services for which the mark is used, (F) the degree of recognition of the mark in the trading areas and channels of trade, (G) the nature and extent of use of the same or similar marks by third parties, and (H) whether the mark was registered. *Id*. If a mark is famous, the mark is entitled to protection against dilution as well as infringement, and this dilution protection is somewhat broader, as it includes protection against marks that do not actually infringe but which dilute the "distinctive quality of the [famous] mark." *Id*.

Texas law also provides anti-dilution protections. The Texas Business and Commerce Code provides for protection against acts which are "likely to injure a

business reputation or dilute the distinctive quality of a mark ... regardless of whether there is competition between the parties or confusion as to the source of goods or services." Tex. Bus. & Comm. Code §16.29.  As under federal law, § 16.29 requires a higher degree of distinctiveness than an ordinary infringement claim.  *Lawfinders Assocs., Inc., v. Legal Research Cntr., Inc.*, 65 F.Supp. 2d 414, 428 (N.D. Tex. 1998).

The district court did not explicitly consider the above mentioned factors, and simply held that there was no dilution.  The district court appeared to rely primarily on the existence of other uses of the word, "Pulse," which, under 15 U.S.C. § 1125(c)(1)(G), are probative of whether Pulse EFT's mark is famous. There was no substantial evidence that the Pulse EFT mark had achieved any particular notice outside the electronic transfer of funds industry, and accordingly, no evidence that the mark was famous.

Pulse EFT also claims that the district court relied too heavily on its finding of a lack of likelihood of confusion, The record tends to show that the district court relied on the lack of real confusion in any relevant market as proof that the mark had so little "fame" as to be virtually invulnerable to dilution.  This finding of fact is not clearly erronious.

Sears' evidence of other uses of the word "pulse" provided substantial

support for its claim that the word has several common meanings beyond Pulse EFT's debit cards. The common use of the word tends to neutralize its use as a mark and delays its becoming "famous" for purposes of the anti-dilution laws. Pulse EFT provided evidence only that its mark is "famous" in that it has brand recognition in relation to electronic banking. But the evidence is far from conclusive. A mark that evokes an association with a specific source only when used in connection with the particular goods or services it identifies is ordinarily not sufficiently distinctive to be protected against dilution. Restatement (Third) of Unfair Competition §25 cmt. e (1995). For example, "Kodak" evokes an association with cameras and film, even without an explicit association with that product market. *See id.* Pulse EFT did not produce evidence that its mark is distinctive beyond the electronic banking market. Although a mark that is distinctive and famous only within a specific market segment can be protected against dilution directed at that market segment, Sears' "Pulse" card is connected in no respect with electronic banking functions. It is only a wallet size card that can be used at the point of sale in Sears stores promotional purposes, but not for credit. The Sears card does not perform any of the functions of Pulse EFT's cards, and nothing in Sears' advertising would lead anyone to think that it did. Pulse EFT's mark has risen to no level of distinctiveness that would make it "famous" for

purposes of protection against dilution outside the bank transfer industry.  The

district court did not err in finding that Pulse EFT's mark was not famous for

dilution purposes.

### *Tarnishment*

Under Texas law, "dilution by tarnishment occurs when the mark is linked to

products of shoddy quality, or is portrayed in an unwholesome or unsavory context

such that the public will associate the lack of quality" in the defendant's goods or

services with the plaintiff's unrelated goods or services.  *Pebble Beach Co. v. Tour

18 I, Ltd.*, 942 F.Supp. 1513, 1565 (S.D. Tex. 1996) *aff'd as modified* 155 F.3d 562

(5th Cir. 1998).  Federal cases on this topic are sparse, but the analysis under state

law is instructive.  The question is whether the junior mark casts the senior mark in

an unsavory light.  *See* Lynda J. Oswald, *"Tarnishment" and "Blurring" Under

The Federal Trademark Dilution Act of 1995*, 36 AM. BUS. L.J. 255, 274-75

(1999).  Pulse EFT's only evidence on this point is a speculative opinion that its

customers' image of reliability will suffer when customers at Sears see the mark

"Pulse" but cannot use their "Pulse" debit card, even though Pulse EFT cannot point

to any evidence of this phenomenon.  Pulse EFT does not claim that mere

association of its name with Sears' will tarnish its image.

## Conclusion:

The absence of a written memorandum of the district court's reasoning caused this court to examine the evidence both under Fed. R. Civ. P. 52 and in the nature of *de novo* review to decide whether appropriate legal theories were employed. However, even under rigorous review, we have found no reversible error.

AFFIRMED